Argued January 25, affirmed March 23, 1955

# TAMURA *v.* DeIULIIS

281 P. 2d 469

*John R. Latourette,* of Portland, argued the cause for respondent. With him on the brief were Latourette & Latourette, of Portland.

*William C. Martin,* of Portland, argued the cause for appellant. With him on the brief were Larry Landgraver and Dusenbery, Teiser, Martin & Schwab, all of Portland.

Before WARNER, Chief Justice, and TOOZE, LUSK and BRAND, Justices.

BRAND, J.

The plaintiff was the lessee of lands described in the complaint and belonging to the defendant E. DeIuliis. He brings this suit seeking a reformation of the lease by correcting the description of the property. The right to such reformation was not contested. The trial court properly entered a decree reforming the lease by correcting the description. The contested issue in the case relates to the rights of the plaintiff

under certain provisions of the lease, by virtue of which the plaintiff claims a right to purchase the property or in the alternative to have a renewal of the lease. He seeks specific performance. The trial court entered a decree requiring the defendant to specifically perform by executing to the plaintiff a renewal lease. The defendant appeals.

The lease agreement was made on the first day of January 1946 between the defendant DeIuliis, as lessor, and Kazuma Tamura, as lessee. In accordance with the agreement of the parties the lessee assigned the lease to the plaintiff, and we shall hereafter refer to the plaintiff as the lessee. The lease described the lands covered thereby; set forth the rental prices; and then provided that the lease should continue for a period of seven years from the first day of January 1946. The critical provision in the lease reads as follows:

"Lessor reserves the right to sell the land described in this lease at the expiration of the lease period, lessee shall have first option to buy, but if lessor elects not to sell the land the lessee is granted the privilege of renewing this lease at the expiration thereof under the same terms and conditions covered by this lease."

There was a further provision in the lease to the effect that as additional land was cleared, the same should be added to the lease, and the lessee should pay as rental a sum specified therefor. The lessee improved the property and built a house and other structures upon the same, thereby making permanent and valuable improvements thereon. The original lease expired on 31 December 1952. On 12 November 1952 the defendant, by his attorney, wrote the following letter to the plaintiff:

"I have been authorized by Mr. and Mrs. Earnest DeIuliis to advise you that they have elected to

place for sale the property now occupied by you under a lease which expires December 31, 1952, and are accordingly offering the same to you on the following terms and conditions, the 18 acres now occupied by you for a total of $36,000.00 payable one-half down and $2,000.00 per annum plus 6% interest on the balance. He is contemplating the sale of the entire tract including the newly cleared ground with a total acreage of approximately 41 acres which includes the 18 acres now occupied by yourself for a total price of $49,000.00 with one-half down and $2,000.00 per year plus 6% interest on the balance.

"This offer must be accepted or refused on or before the 1st day of December, 1952, and your failure to accept or to notify us of your election to accept will be construed as notice of non-acceptance and the properties will then be placed for sale on the open market and in any event there will be no extention of the lease when it expires on December 31, 1952. In the event of your non-acceptance of this offer to purchase you are notified to quit the premises as of that date, to restore the dwelling which was altered into a garage to its former condition as a dwelling, and to leave all other buildings and improvements as provided in said lease."

On 1 December the plaintiff, by his attorney, wrote to counsel for the defendant, in part, as follows:

"* * * Mr. Kuniji Tamura, has authorized us to say that he expects to comply with the terms of the lease in all respects and expects the same treatment from your client.

"It is Mr. Tamura's desire to exercise the privilege of renewing this lease, as provided by the terms thereof, and hereby gives notice of his election to do so.

"However, if your client elects to sell at the expiration of the lease period, then Mr. Tamura gives notice that he will buy the same.

"The price quoted by you is fantastic and entirely out of line with the market value of the property, which suggests that it is not made in good

faith. Mr. Tamura stands ready, able and willing to purchase said property at its fair market value for cash.''

On 9 December counsel for the defendant wrote counsel for plaintiff, in part, as follows:

''This is definite notice that there will be no renewal of the lease at the end of the period because the property will definitely be placed for sale immediately upon the expiration of this lease and if your client has any counter-proposal to make on the manner of purchasing he should do so prior to the 1st day of January, 1953, because as of that date this property will be advertised for sale at the above stated prices.''

On 18 December counsel for the plaintiff wrote to counsel for the defendant, stating that Mr. Tamura intended to purchase all of the lands covered by the lease, in accordance with the option, and that he stands ready, able and willing to purchase said property at its fair market value ''which he considers to be $9,250.00, which sum he does now tender.'' On 29 December, defendant, through his attorney, gave notice that he rejected the offer of $9,250.00. The notice further informed the plaintiff that the property ''is as of now being listed for sale at the prices which we have offered it to your client for and we are demanding immediate possession of the premises in order that there will be no hampering of the sale of the premises.'' On 30 December 1952 the plaintiff filed this suit. On the second day of January the property was listed for sale with a real estate agent by the defendant.

In his prayer the plaintiff seeks a decree requiring the defendant to convey to the plaintiff all of the said property upon tender by the plaintiff of the reasonable market value thereof to be fixed by the court. In the alternative, plaintiff prays that ''in the event that

the Court should find that defendants' election to sell is not bona fide and that defendants have not elected to sell upon the termination of said lease, that plaintiff be permitted to renew said lease; * * *."

We agree with the statement of the defendant that "only the one paragraph referring to the right to sell, renewal, and first option to buy, is the subject of this appeal." We disregard the claim of the plaintiff that he has a right to purchase the property at a reasonable price to be fixed by the court. The decree of the lower court granted him no such right and he has not appealed. Furthermore we do not construe the provision of the lease as granting him any such right. The only question before us is whether the trial court erred in rendering a decree requiring the defendant to execute to the plaintiff an extension of the lease for a period of seven years, under the terms and conditions specified in the lease and in the decree.

■ After hearing voluminous testimony the trial court found as a fact "that the price so set [by the defendant E. DeIuliis] was approximately four times the land's actual value, that it was not a bona fide offer or election to sell and that it was a mere subterfuge upon the part of the defendant lessor to keep from renewing the lease." The evidence supports the finding of the trial court in this respect.

The relevant paragraph of the lease fixes the time as of which the lessor had a right to sell the land described in the lease. That right was fixed as being "at the expiration of the lease", to wit, December 31, 1952. The next matter of importance relates to the time at which the lessee should have the privilege of renewing the lease. That time is fixed as being "at the expiration thereof"—that is—at the expiration of the first seven-year lease.

We now consider the meaning of the provision that "Lessee shall have first option to buy, but if lessor elects not to sell the land the lessee is granted the privilege of renewing this lease. * * *."

The lessor relies upon the case of *Gunsenhiser v. Binder*, 206 Mass 434, 92 NE 705. In that case, as here, the rights of the parties were dependent upon the construction of a lease, which contained the following provision: "If the lessor at any time after the expiration of the first five years of this lease, desires to sell the land, this lease may be terminated" upon conditions and payments to be made as specified. The Massachusetts case is clearly distinguishable. There was no provision in that case that the lessee "shall have the first option to buy." We cannot accept the theory that under the terms of this lease the lessor might specify any figure whatsoever as to the price to be put upon the land, and then require the lessee to pay such price, however exorbitant, or lose his right to a renewal of the lease.

■ The evidence strongly supports the proposition that the price fixed by the lessor was so exorbitant as to be an evidence of bad faith. Furthermore, the fact that the lessee was to have the first option to buy indicates to our mind that the parties contemplated the usual situation whereby if the owner receives an offer from a third party, the lessee, or the person having the first option to buy, shall have a right to meet any such bona fide offer of the third party. Such is the meaning of the "first option to buy" referred to in the clause of the lease. This appears to be the view of the defendant, as indicated by the following statement in his brief:

"* * * It should be pointed out here that lessee has the first option to buy only, and it was therefore altogether proper that the lessee offer

it to others so long as the lessee be given the right to match any third parties price. * * *''

In this connection, attention is directed to the fact that in the defendant's letter of 12 November 1952, it was not stated that the defendant had elected to sell. The statement went only to this extent; that Mr. and Mrs. DeIuliis ''have elected to place for sale the property now occupied by you * * *.'' It is apparent that they had at that time no offer from any third party and that they were simply seeking to compel the plaintiff, a Japanese person having no familiarity with business matters, to purchase the property at the exorbitant price of $36,000, when the weight of evidence tended to show that the reasonable market value of the property was somewhat in excess of $9,000. As stated by Mr. Justice Holmes for the court in *William W. Bierce, L'd. v. Hutchins,* 205 US 340:

> ''Election is simply what its name imports; a choice shown by an overt act, between two inconsistent rights, either of which may be asserted at the will of the chooser alone. Thus, 'if a man maketh a lease, rendering a rent or a robe, the lessee shall have the election.' ''

The letter of 12 November 1952 did not indicate an election to sell the property, that is, to make a specific sale for a specified price and to a specified buyer. It on the contrary, advised the plaintiff that they had elected, in substance, to put the property in the hands of a real estate dealer for sale. Obviously the election to sell would not and could not be exercised until an opportunity to sell was presented. We find that the defendant in the pending case made no ''election'' to sell at the time on or before which such election was required to be made. In our view, an election to do an act is to be distinguished from an election not to do

anything. The election to sell must have been manifested by affirmative action upon an existing opportunity to make a specific sale. On the contrary, an election not to sell may be manifested simply by the fact that there was no election to sell.

■ At the expiration of the lease on 31 December 1952, the evidence discloses no offer by any person to buy the property, except the offer of the plaintiff in the sum of $9,250 which was made in the letter of 18 December and which was rejected by the defendant on 29 December. At the expiration of the lease period the lessor had a right to sell, subject to the right of the lessee to exercise at that time his first option to buy, but the right of the lessee to a renewal also accrued *at the expiration* of the lease. At that time the lessor had elected not to sell to his only bidder and had taken no action amounting to an election to sell to any one else. His only election, if such it should be called, was to advertise for a bidder at $36,000. In our opinion the right of the lessee to a renewal of the lease accrued at that time. The agreement, as worded, cannot be construed as giving to the lessor a continuing right of indefinite duration to seek for a buyer at $36,000 or any other sum. Under these circumstances the plaintiff was entitled to remain in possession under his accrued right to a renewal. The injunction which was issued on 30 December violated no right of the defendant in restraining him from dispossessing the plaintiff. The injunction was only in effect until the 14th of January 1953 and while in effect would not have prevented any bona fide buyer from making a firm offer to buy, upon the furnishing of marketable title. Hence it follows that even if defendant's right to elect to sell had continued after the expiration of the lease, the injunction would not have prevented him

from securing such an offer as would have enabled him to elect to sell on the basis thereof. For all the record shows, the defendant has never had any offer except the one made by plaintiff, which was rejected.

Defendant claims that the court which tried this case on 11 February 1953, and decided it as of 5 March, should give the defendant a further opportunity to sell before allowing specific performance of the renewal agreement. The contention is without merit.

The trial court fairly and correctly considered the issues of this case and held that the plaintiff was entitled to the renewal of the lease for an additional period of seven years, as provided in the decree. The decree of the circuit court is therefore affirmed, with costs to the respondent.