Argued March 10, affirmed April 19, 1967

FRIEDMAN, *Respondent, v.* BRIDGER ET UX,
*Appellants.*

426 P. 2d 859

*A. C. Yaden,* Klamath Falls, argued the cause and filed briefs for appellants.

*Hal F. Coe,* Klamath Falls, argued the cause and filed a brief for respondent.

Before McALLISTER, Presiding Justice, and SLOAN, DENECKE and REDDING, Justices.

McALLISTER, J.

This is a suit for an accounting in which the lower court found for the plaintiff, and defendants appeal.

There is no dispute about the basic facts which resulted in the rather unusual relationship existing between the plaintiff and the defendants. Plaintiff's mother, Genevieve Bunce, was the owner of a restaurant and tavern at Keno, in Klamath county, known as the "Rainbow Lunch." She died on July 1, 1953, leaving a will which did not name or provide for plaintiff, but left all of her property to her husband, John Bunce. A dispute over the estate arose between plaintiff, as a pretermitted heir, and his stepfather, which was settled by an agreement dated July 1, 1954. The agreement provided that plaintiff would own a one-fourth interest and that Bunce would own a three-fourths interest in all of the property of the estate, both real and personal, including the Rainbow Lunch and the real property on which it is situated. This agreement was approved by the probate court and effectuated by the parties.

We are concerned here only with the Rainbow Lunch and the real property on which it is located, hereinafter referred to as the tavern or the business.

The agreement of July 1, 1954 provided:

(1) That Bunce should occupy the premises and

operate the tavern and maintain adequate books and records.

(2) That the net profits of the business should be divided between the parties in proportion to their respective interests.

(3) That Bunce should bear all losses of the business and save plaintiff harmless "from any claim, loss or liability resulting from Bunce's possession and operation of said property and business."

(4) That if the net profits of the business should be less than $1,000 per year, Bunce should pay to plaintiff the sum of $250 less plaintiff's share of any net profit made in that year.

(5) That if the net profits of the business should be less than $1,000 per year in any three consecutive years, the tavern, including the real property, should be put up for sale at a minimum price to be agreed upon by the parties, and the proceeds divided in accordance with their respective interests.

(6) That all expenses in connection with the operation and maintenance of the business, and all expenses in connection with the real property, including taxes and assessments, and the expenses of maintenance and repair of the buildings and improvements situated on said real property, should be borne by the business.

(7) That the business expenses should include a reasonable salary to be paid Bunce for his services in managing and operating the business, which the parties fixed by agreement at "ten percent of the gross proceeds and board and room."

(8) That Bunce had advanced the sum of $2,100 to pay claims against the estate of Genevieve Bunce and "on behalf of said business," and that the amount so advanced should constitute a charge against said business and that Bunce

> should be reimbursed for said sum "out of the proceeds of the sale of said business and real property if and when said business and real property is sold."

John Bunce died and his interest in the property involved here was acquired by his father, William K. Bunce, who in turn sold the Bunce interest in the property to the defendants. The defendants have occupied the property and operated the tavern since September 24, 1956. Defendants stipulated in the trial court that they are liable to perform all the obligations imposed by the agreement on their predecessor in interest, John Bunce.

■ It was conceded in the trial court that the net profits of the business had not exceeded $1,000 in any year, and the court found that plaintiff was entitled to recover from defendants $250 per year from July 1, 1954 to the date of trial, less the sum of $250 paid to plaintiff by Bunce for the first year of the agreement. As to this award defendants contend in this court that they are liable for the minimum of $250 per year only from September 24, 1956, when they bought Bunce's interest in the property, instead of from July 1, 1954. In view of their stipulation in the trial court that they are bound to perform all the obligations imposed on John Bunce by the agreement, this contention is devoid of merit.

In the trial court defendants alleged that they had incurred a deficit in the operation of the business in the sum of $6,440.52, and that in addition, Mrs. Bridger was entitled to wages for her services in helping to operate the business in the sum of $23,067. The trial court found against defendants on these claims, and properly so. The agreement between plaintiff and defendants' predecessor provided that Bunce should bear

all losses resulting from the operation of the business and save plaintiff harmless from any liability "resulting from Bunce's possession and operation of said property and business." It was stipulated that these provisions are binding on defendants. Since plaintiff is not liable for any portion of the business losses, we express no opinion as to the extent of the losses, if any, sustained by the defendants in the operation of the business.

Defendants' answer also contained two purported counterclaims. The first alleged that defendants had been damaged by plaintiff's failure to cooperate with them in securing a liquor license for the tavern. The second alleged that plaintiff wrongfully "refused to consider any sale proposed or to try for a sale of said property." We will not pause to consider the adequacy of the pleadings, since as to both claims there was a failure of proof.

■ Defendants also asserted a claim to the $2,100 which was to be reimbursed to Bunce "out of the proceeds of the sale of said business and real property if and when said business and real property [was] sold." The trial court held that this claim was premature, and we agree. If the property is sold by mutual agreement of the parties, or pursuant to judicial decree, defendants will be entitled to recover this item.

The contract provides that if the net profits of the business shall be less than $1,000 per year in any three consecutive years, "said business and said real property will be put up for sale through a qualified real estate broker at a minimum sales price to be agreed upon by the parties." The defendants attempted to allege a cause of action for damages for a breach of this provision of the agreement by plaintiff, but failed in their proof. Defendants did not al-

lege or prove a cause of suit for specific performance of this provision. The decree in this case will not prejudice their rights to take any action to which they may be entitled to terminate their relationship with plaintiff.

The decree is affirmed.