Argued and submitted March 13, affirmed in part; reversed in
part, and remanded July 27, reconsideration denied September 17,
petition for review denied October 20, 1981 (291 Or 771)

## DENNIS,
### *Appellant,*

*v.*

## McLEAN et al,
### *Respondents.*

## (No. L-4376, CA 18389)

631 P2d 839

John L. Jacobson, Baker, argued the cause and filed the brief for appellant.

Gary L. Marlette, Baker, argued the cause and filed the brief for respondents.

Before Gillette, Presiding Judge, and Roberts and Young, Judges.

YOUNG, J.

## YOUNG, J.

This action is for breach of a lease agreement. Defendants leased a dairy farm, including a dairy herd and equipment, from plaintiff for a term of two years, ending August 14, 1979.[1] Defendants were required under the agreement to "farm the premises in a good and farmerlike manner and care for the animals and their replacements in a businesslike manner consistent with practices generally accepted by good dairy breeders in the community." At the time the lease was entered into, plaintiff had contemplated selling the farm. The agreement gave defendants the first right to refuse purchase of the real property should the plaintiff-lessor decide to sell it.[2]

During the term of the lease, plaintiff notified defendants that he considered them to have breached the lease by failing to operate the farm and care for the herd in a good and farmerlike manner.

■■ After the lease expired, plaintiff filed a complaint for damages. Defendants counterclaimed, alleging that plaintiff had breached their right of first refusal by selling the real property to plaintiff's son without first offering it to them on the same terms. Following plaintiff's case in chief, defendants moved for a directed verdict,[3] which the court granted. The jury returned a verdict in the amount of $20,000 on defendants' counterclaim.

---

[1] The lease agreement provides for the lease of real property and dairy equipment. The agreement further provides for the maintenance and supervision of a dairy herd. There is no provision leasing a dairy herd. The parties have apparently proceeded on the basis that approximately 51 head of cattle were intended to be included in the lease.

[2] The right of first refusal provided, in pertinent part:

"If Lessor should decide to sell said real property * * *, Lessees shall have the first right to refuse the purchase of the property. This first right of refusal shall continue in force until the expiration of the lease."

[3] When defendants' counsel moved for a directed verdict, the court informed him that directed verdict motions had been eliminated by the Oregon Rules of Civil Procedure and that the proper motion was a motion to dismiss. The motion for a directed verdict has not been eliminated and may be made pursuant to ORCP 60. A motion to dismiss is the proper motion to test the sufficiency of the evidence at the close of plaintiff's case in an action tried without a jury. See ORCP 54B.(2). The proper motion to test the sufficiency of the evidence in a jury case, at the close of plaintiff's case or at any other time before submission to the jury, is a motion

On appeal, plaintiff asserts the trial court erred: (1) by granting defendants' motion for a directed verdict; (2) by denying his motion for a directed verdict at the close of all the evidence; and (3) by failing to instruct the jury that defendants' damages would be predicated on their being financially able to exercise the purchase option.

■    In considering whether the trial court erred by granting or denying a motion for a directed verdict, the evidence must be interpreted in the light most favorable to the non-moving party, and that party is entitled to the benefit of every reasonable inference supported by the record. *Compare, McEwen v. Ortho Pharmaceutical,* 270 Or 375, 381-82, 528 P2d 522 (1974) (denying motion), with *McCall v. Inter Harbor Navig. Co.,* 154 Or 252, 259, 59 P2d 697 (1936) (granting motion).

> "A motion for directed verdict, no matter by whom made, is designed simply to raise a question of law for the court. The movant in effect asserts that the evidence adduced by the other party is not sufficient to state a claim (or a defense) and that therefore there is no question for the jury to decide. The request is for a ruling on the *sufficiency* of the opposing party's evidence * * * ." (Emphasis in original; footnote omitted.) *Godell v. Johnson,* 244 Or 587, 590-91, 418 P2d 505 (1966).

We review plaintiff's first two assignments of error with these principles in mind.

At trial, plaintiff introduced evidence tending to show damage to the farm and cows as a result of defendants' farming practices. Plaintiff testified that fences, panels and corrals were damaged and had fallen into disrepair, that pastures were overgrazed, and that the milk cows had been neglected. Plaintiff also testified regarding the cost to repair the damage.

■ ■    It appears that the trial court's ruling on defendants' motion for a directed verdict was based on the fact that plaintiff sought damages for repairs made to the

for a directed verdict. Since this case was tried to a jury, the motion for a directed verdict was appropriate. ORCP 60 does provide that "the court may, at its discretion, give a judgment of dismissal without prejudice under Rule 54 rather than a directed verdict." This would give plaintiff an opportunity to refile in a jury case. There is no indication here, however, that the trial court was exercising its discretion to dismiss without prejudice. We review the order as one granting a directed verdict.

premises after he had sold the property to his son. Plaintiff's damages are measured by the diminution in value of his property resulting from defendants' conduct. *Winans v. Valentine,* 152 Or 462, 54 P2d 106 (1936). Diminution can be shown either by evidence of depreciation in the market value of the property, if the injury is permanent, or by evidence of the cost of restoration, if the injury is temporary. *Hudson v. Peavey Oil Company,* 279 Or 3, 566 P2d 175 (1977). Plaintiff introduced substantial evidence of repair costs. Defendants, however, argue that the costs were not necessitated by any conduct on their part because the costs were incurred after plaintiff had sold the property to his son at what plaintiff testified was a fair price.

At trial, plaintiff testified that he made representations to his son that the dairy would generate income in the amount of $3,000 to $3,500 per month. The herd only brought in $2,500 during the first month. Plaintiff testified that the low dairy production resulted from the condition in which the defendants left the property, that he took it upon himself to improve the property, feeling obligated to do so by virtue of the representations he had made, and that production rose to $3,500 per month after the repairs were made. At best, this testimony demonstrates only a moral obligation to repair the premises. There is no evidence that plaintiff's representations were binding contractual promises. Plaintiff sold the farm at what he considered was a fair price, without diminution on account of the condition in which defendants left it. Plaintiff cannot now recover for the cost of repairs voluntarily made. It was not error to grant defendants' motion for a directed verdict.

In their counterclaim, defendants allege they were damaged by plaintiff's failure to allow them to purchase the farm at the same price and on the same terms as were offered by plaintiff's son. Generally, a right of first refusal imports "a preferential right of the lessee to purchase the leased premises at the same price and on the same terms contained in any bone fide offer from a third person acceptable to the lessor." 51C CJS, Landlord and Tenant, §88(3); *see Tamura v. DeIuliis,* 203 Or 619, 281 P2d 469 (1955); *see generally,* 1A Corbin on Contracts § 261 (1963).

Viewed most favorably to defendants, the evidence supports a conclusion that plaintiff accepted an offer from

his son to purchase the farm, dairy herd and equipment for $230,000, payable in full whenever the funds became available from the Farmers Home Administration. Furthermore, the jury could have concluded that, when plaintiff gave his son an option to purchase the property in January, 1979, plaintiff agreed to sell the real property for $190,000 without any requirement to purchase the herd and equipment. Although the right of refusal in the lease refers specifically to "the real property," defendants were never given an opportunity to purchase the real property alone. The only offer which defendants were invited to meet can reasonably be interpreted as requiring a purchase price of $240,000 for the entire operation, with a down payment of $20,000 payable within two days from the date the offer was mailed to defendants and the balance to be paid within 30 days thereafter. We find there was sufficient evidence from which a jury could reasonably conclude that plaintiff breached the right of first refusal. The court did not err in denying plaintiff's motion for a directed verdict.

■ At the close of trial, the court instructed the jury on defendants' damages as follows:

"I instruct you that if you find that the plaintiff sold the real property to his son, Kirk Dennis, without first offering it for sale to defendants at the same price and upon the same terms, that the measure of damages to be awarded to the defendant would be the difference between the fair market value of the real property at the time of the breach and the price for which the real property was sold to Kirk Dennis.

"Fair market value means the price that would in all probability have been arrived at between a seller willing to sell and a buyer desiring to buy with neither of them being under any compulsion."

Plaintiff objected to these instructions, contending that the jury should have been instructed to take into account, when considering defendants' damages, whether or not defendants were financially able to exercise the right of first refusal. A substantial portion of plaintiff's defense was devoted to showing that defendants could not have purchased the dairy had a proper offer been extended in any event, because they had already purchased another farm.

Defendants rely on *Fullington v. M. Penn Phillips Co.*, 238 Or 321, 395 P2d 124 (1964), and *Saltman v. Dunham*, 241 Or 399, 406 P2d 153 (1965). In *Fullington*, the defendant lessor repudiated a lease prior to the expiration of the term. The lease granted the plaintiff-lessee an option to purchase the property.[4] At the trial of plaintiff's action for damages defendant objected to the admission of evidence of the market value of the land. Defendant's argument was that plaintiff was not entitled to damages because he had not exercised the option to purchase. The trial court agreed and subsequently entered a judgment of involuntary nonsuit, reasoning that plaintiff could only bring suit for specific performance and not an original action for damages, in the absence of proof that he had exercised the option. The apparent rationale was that plaintiff's damages would otherwise be speculative. The Supreme Court reversed, stating:

"'* * * [T]he accepted principles of contract law compel us to recognize the right of the option holder to recover damages upon breach of the option contract. The rule applied by the lower court would require the option holder to make his election to purchase the property prior to the expiration of the option period. But this would deprive the option holder of the very privilege for which he has bargained, that is, the assurance that he will have the entire option period in which to make his decision.

"We recognize that the rule we have adopted may permit the recovery of damages even though the option holder might not have exercised his option within the period and, therefore, would not have been damaged. Having repudiated the option contract and created this element of speculation, the option giver should not be permitted to deprive the option holder of damages on the ground that they are speculative." 238 Or at 324.

In *Saltman*, the defendant-lessor also breached a purchase option but claimed that the lessee was not damaged because he could not have complied with a condition precedent to exercising the option. The court noted, however, that under the factual posture of the case the

---

[4] *Fullington* and *Saltman* deal with "true" options to purchase. A right of first refusal is not an option because it is not an offer to sell and it creates no power of acceptance. The right becomes an option, however, once the seller accepts an offer made by a third party without first offering the holder of the right an opportunity to purchase on the same terms. 1 A Corbin on Contracts § 261, 468, 472-74 (1963).

lessee had not been completely precluded from exercising the option. The court refused to allow the lessor to take advantage of the "element of speculation" he had created and affirmed the judgment in favor of the lessee.

*Fullington* and *Saltman* differ significantly from the present case. Neither case says that the option holder is entitled to speculative damages; they hold only that the option holder is not prevented from going forward with his case by the possibility that his damages might be speculative. Plaintiff's objection to the court's instruction on damages is consistent with those holdings in that plaintiff has not sought to prevent the jury from finding that defendants were damaged. What plaintiff requested was an instruction that would have permitted the jury to find that defendants, by virtue of their inability to purchase, were not damaged. In *Fullington,* the court observed that an optionee who might not have exercised his option would not be damaged. It follows that an optionee who could not exercise his option likewise would not be damaged. The trial court's instruction erroneously removed that possibility from the jury's consideration.

Defendants argue that they could and would have exercised their right to purchase the property. They also assert that, because they relied to their detriment on certain representations by plaintiff, plaintiff is estopped to deny their ability to purchase. While there is some evidence to support both claims, it is evidence which the jury could have rejected. The case must be remanded on the counterclaim.

Affirmed in part; reversed in part, and remanded.