HAROLD J. KANAVOS *vs.* HANCOCK BANK AND
TRUST COMPANY.

Suffolk. February 7, 1985. — June 13, 1985.

Present: WILKINS, LIACOS, ABRAMS, NOLAN, & LYNCH, JJ.

*Contract*, Option, Performance and breach, Sale of securities.

At the trial of a civil action in which the plaintiff sought to recover damages
for the defendant's alleged repudiation of an option agreement for the
sale of certain stock, the judge erred in failing to instruct the jury that,
to recover, the plaintiff had to be ready, willing and able to purchase
the stock during the option period. [201-204]
The plaintiff in an action for damages arising from the defendant's alleged
repudiation of an option agreement for the sale of certain stock would
have the burden of proving that, if he had been given proper notice of
his right to meet a third person's offer to purchase the stock, he would
have been ready, willing and able to do so during the option period.
[204-206]

CIVIL ACTION commenced in the Superior Court on May
12, 1977.

Following review by the Appeals Court reported in 14 Mass.
App. Ct. 326 (1982), the case was retried before *Andrew R.
Linscott*, J.

The Supreme Judicial Court on its own initiative transferred
the case from the Appeals Court.

*James R. DeGiacomo* (*Susan J. Baronoff* with him) for the
defendant.

*Nicholas A. Abraham* for the plaintiff.

WILKINS, J. This appeal presents two basic questions. First,
if, for valid consideration, the owner of stock in a corporation
has agreed to give A the opportunity to purchase that stock at
the price at which the owner intends to sell it to another in the
future (a right of first refusal) but the owner instead sells the
stock to a third party without giving A the opportunity to match

the third party's offer and thus acquire the stock, does A's right to recover in an action for breach of contract in any way depend on whether A had the financial ability to purchase the stock during the relevant time? Second, if A's right does so depend, as we conclude it does, does A have the burden of proving his financial ability to perform or is the burden on the repudiating former stockholder to prove A's inability to perform?

The plaintiff Harold J. Kanavos (Kanavos) is A in the example given, an individual to whom the defendant Hancock Bank and Trust Company (bank) gave the right to acquire all the stock of 1025 Hancock, Inc., before the bank sold the stock to anyone else on the same terms. This corporation owned a fourteen-story apartment building, known as Executive House, on Hancock Street in Quincy. The corporation was a G. L. c. 121A limited dividend corporation, and the first mortgage was guaranteed by the Federal Housing Administration of the Department of Housing and Urban Development. On July 16, 1976, James M. Brown, then executive vice president of the bank, gave Kanavos a letter in which the bank agreed to pay him $40,000 for surrendering an option to purchase the stock and further gave Kanavos "the option to match the price of sale of said property to extend for a 60 day period from the time our offer is received." In November, 1976, the bank entered into a purchase and sale agreement to sell the stock for $760,000 to a third person and, early in December, the bank sold the stock accordingly without giving Kanavos notice and the opportunity to purchase the stock.

For the purpose of determining Kanavos's contract damages, apart from the $40,000 to be paid for the surrender of his option, the parties and the trial judge treated the value of the stock as equal to the value of the equity in the apartment building. The balance on the first mortgage was $2,500,000 at the relevant times. When the jury, in response to a special verdict question, concluded that the apartment complex was worth $4,000,000, contract damages were determined by subtracting from $4,000,000 the balance due on the mortgage ($2,500,000) and the sale price of the stock ($760,000). That

damage figure ($740,000) equaled the amount by which the fair market value of the stock exceeded the price at which it was sold. The $40,000 option surrender payment was then added to arrive at a final judgment of $780,000.

The judge presented the case to the jury seeking a special verdict (see Mass. R. Civ. P. 49, 365 Mass. 812 [1974]) on (a) the authority of the bank's executive vice president to grant the plaintiff the right of first refusal,[1] (b) the market value of the apartment complex, and (c) the right of the plaintiff to recover the $40,000.[2] The bank's only challenge to the special verdict and resulting judgment is that the judge failed to instruct the jury (and give them an associated special verdict question) that the plaintiff had to be ready, willing, and able, pursuant to the letter creating the right of first refusal, to pay the bank $760,000 (i.e., within the sixty days, to match the offer the bank received and accepted).

The judge ruled, over objection, that Kanavos's ability to pay $760,000 was not material to this case. This is the first issue we stated above in the abstract. We conclude that Kanavos's financial ability was material because he should not recover contract damages, even from a repudiating promisor, under an agreement to sell stock unless he could have complied with his concurrent obligation to pay for the stock (or, as is not the case here, unless the bank's conduct substantially prevented Kanavos from being able to meet his obligation).[3]

---

[1] The question whether the evidence warranted a finding that the executive vice president had authority to give the plaintiff a right of first refusal was decided favorably to the plaintiff in *Kanavos* v. *Hancock Bank & Trust Co.*, 14 Mass. App. Ct. 326 (1982). That opinion gives background of the relationship of the parties which we need not repeat.

[2] The bank does not challenge here the plaintiff's right to the $40,000.

[3] Kanavos argues that the bank has not properly preserved its right to challenge the judge's failure to put to the jury the question of Kanavos's ability to pay for the stock. The bank properly preserved its right, and the judge fully intended to protect the bank's appellate rights in this respect. It was an issue that was presented and considered by him before the jury retired. It is equally apparent that, before this court, the bank's argument that the judge should have instructed the jury on the ability-to-pay issue embraces his failure to submit a related question to the jury.

When the bank received an offer for the stock that it was prepared to accept, the bank was obliged to give Kanavos the right to match that offer. At that point, Kanavos had an option to purchase the stock on the same terms, although, of course, in this case he was unaware that such an offer (and hence the option) existed. He could have exercised his option by tendering the purchase price, and the bank would have been obliged to deliver the shares of stock. In the circumstances of this case, Kanavos was not obliged to make a meaningless tender of the purchase price. The stock had already been sold. However, one party's repudiation of a bilateral contract containing simultaneous obligations does not normally make immaterial the question whether the other party could perform his obligation. "It is the general rule 'that when performance under a contract is concurrent, one party cannot put the other in default unless he is ready, able, and willing to perform and has manifested this by some offer of performance' although a tender of performance is not necessary 'if the other party has shown that he cannot or will not perform.'" *Mayer* v. *Boston Metropolitan Airport, Inc.*, 355 Mass. 344, 354 (1969), quoting *Leigh* v. *Rule*, 331 Mass. 664, 668 (1954).

The weight of authority in this country is that the financial ability of a prospective buyer of property is a material issue in his action for damages against a repudiating defendant for breach of an agreement to sell that property for an established price. See 5 S. Williston, Contracts § 699, at 352-353 (3d ed. 1961), and 6 S. Williston, Contracts § 882, at 394 (3d ed. 1962); 4 A. Corbin, Contracts § 978, at 924-925 (1951); Restatement (Second) of Contracts § 254 comment a (1981) (the duty of a repudiating party "to pay damages is discharged if it subsequently appears that there would have been a total failure of performance by the injured party"); Farnsworth, The Problems of Nonperformance in Contract, 17 New Eng. L. Rev. 249, 306 (1982) (If a seller repudiates an option to sell land, "[a]lthough the holder of the option is under no duty to pay the price of the land, his payment of the price is a condition of the seller's repudiated duty"); Taylor, The Impact of Article 2 of the U.C.C. on the Doctrine of Anticipatory Repudiation,

9 B.C. Indus. & Com. L. Rev. 917, 927 (1967);[4] *Strasbourger* v. *Leerburger*, 233 N.Y. 55, 60 (1922); *Spartans Indus., Inc.* v. *John Pilling Shoe Co.*, 385 F.2d 495, 498-499 (1st Cir. 1967) (New York law); *Dennis* v. *McLean*, 53 Or. App. 282, 289 (1981) ("an optionee who could not exercise his option . . . would not be damaged"). We have taken the view that, even where promises were not concurrent, a plaintiff could only recover nominal or small damages against a defendant who repudiated a contract, where it would have been impossible for the plaintiff to perform a contractual obligation arising shortly after the defendant's breach. See *Randall* v. *Peerless Motor Car Co.*, 212 Mass. 352, 382 (1912).

Here, the bank's obligation to sell the shares and Kanavos's obligation to pay for them were concurrent obligations. If neither could perform, even if the bank repudiated the contract, neither could recover. 6 S. Williston, *supra* § 882, at 389-391. Kanavos did not have to show that he was ready, willing, and able to purchase the stock on the day the bank repudiated its agreement with him by selling the stock. *Thomas* v. *Christensen*, 12 Mass. App. Ct. 169, 177 (1981). That principle does not mean, however, that his ability to purchase the stock during the option period is irrelevant.

Kanavos relies, as the trial judge apparently did, on a statement in *Lowe* v. *Harwood*, 139 Mass. 133, 135 (1885), that, when a seller repudiates a purchase and sale agreement by selling land to a third person, the inability of the plaintiff to pay the purchase price according to the contract terms is unimportant in an action for breach of contract.[5] The *Lowe* opinion

---

[4] "Under general contract law there was, however, a twist: If the non-repudiating party was not in a position to perform either at the time of repudiation or at sometime thereafter prior to the date for performance, he had no remedy. The fact that the repudiation may have been unjustified did not change this result, and the burden of proving the necessary ability to perform was on the nonrepudiating plaintiff." *Id.*

[5] The relevant language of the opinion is as follows: "It is suggested that it does not appear that the plaintiff was able to pay the money which he was to pay. But he was personally bound for it, and the degree of his ability at any moment before he was called on to pay was no concern of the defendant's. The way for the defendant to test that was to tender performance on his side conditionally upon the plaintiff's performing his part of the agreement. See *Brown* v. *Davis*, 138 Mass. 458."

cites no relevant authority for the proposition that a repudiating seller is liable in damages to a buyer who could not have carried out his end of the bargain. That principle, if that is what the court meant, for a time received cautious recognition in some opinions of this court (see *Hawkes* v. *Kehoe*, 193 Mass. 419, 427 [1907]; *Foternick* v. *Watson*, 184 Mass. 187, 193-194 [1903]), but it did not find continuing favor here and appears now to be extinct (see *Beach & Clarridge Co.* v. *American Steam Gauge & Valve Mfg. Co.*, 208 Mass. 121, 133 [1911] [inference of ability to perform warranted]; *Thomas* v. *Christensen, supra* at 178 ["All that (the option holder) would have to show is that he would have been able to purchase the shares if the contract had not been repudiated"]; *Gomes* v. *Fagerberg*, 10 Mass. App. Ct. 927, 928 [1980] [evidence warranted finding of financial ability]). There is no compelling reason to adopt such a rule at this time.[6]

If, as we have concluded, Kanavos's ability to match the offer which the bank accepted is material to his right to recover, the question then is whether the burden of proof should be placed on Kanavos to show his ability or on the bank to show his lack of ability. The general rule is that the plaintiff must prove his ability to perform his obligations under a contract of the type involved here. See *Wolbarsht* v. *Donnelly*, 302 Mass. 568, 570-571 (1939); 5 S. Williston, *supra* § 699, at 352-353; 4 A. Corbin, *supra* § 978, at 925; Taylor, 9 B.C. Indus. & Com. L. Rev. *supra* at 927 ("the burden of proving the necessary ability to perform was on the nonrepudiating plaintiff"). Cf. Restatement (Second) of Contracts § 245 com-

---

[6] We perceive no reason why Kanavos's ability to purchase the stock should be any less significant than the ability of a person who had the right to buy property under a purchase and sale agreement or of a person who held an option to purchase property. Once the bank determined that it would sell the property to a third person, Kanavos's rights were substantially equivalent to an option to buy. Once the bank repudiated its obligation to Kanavos by selling the stock to a third person, Kanavos's rights and his burden of proof were the same as they would have been if he had been a buyer under a repudiated purchase and sale or option agreement. The bank's repudiation of the agreement giving Kanavos a right of first refusal did not estop the bank from arguing that Kanavos lacked the ability to pay for the stock.

ment b (1981) (where an express condition of the defendant's liability has not occurred but the defendant has already repudiated the contract, the repudiating defendant has the burden of proving that the condition would not have occurred). There is not, however, a unanimity of view in this country on the placing of the burden of proof in such a case. Compare *Scholle v. Cuban-Venezuelan Oil Voting Trust,* 285 F.2d 318, 322 (2d Cir. 1960) (New York law), *Reprosystem, B.V.* v. *SCM Corp.,* 522 F. Supp. 1257, 1278-1279 (S.D.N.Y. 1981), rev'd in part on other grounds, 727 F.2d 257 (2d Cir. 1984) (New York law), and cases cited, *Consumers Grocery & Meat Co.* v. *Comensky,* 299 Mo. 43, 55 (1923), and *Schucking* v. *Young,* 78 Or. 483, 493 (1915) (placing the burden on the plaintiff), with *McFerran* v. *Heroux,* 44 Wash.2d 631, 640 (1954) ("So far as the optionee's financial ability is concerned, we have held that, where an optionor has breached his option contract, he has the burden of proving the optionee's lack of ability, and, in the absence of such proof, there is a presumption that the optionee is able to perform. *Palmer* v. *Clark,* 52 Wash. 345 [1909]"), and *Atchison* v. *Englewood,* 193 Colo. 367, 375 (1977) (placing the burden on the defendant).

The burden was on Kanavos to prove his ability to finance the purchase of the stock. The fact of his ability to do so was an essential part of establishing the defendant's liability. Circumstances concerning his ability to raise $760,000 for the stock were far better known to him than to the bank. It is, of course, true that the bank created the problem by selling the stock to another in violation of its contractual obligation, and one could argue that, therefore, it should take the risk of failing to establish Kanavos's inability to purchase the stock. Such an argument, however, has not been generally accepted, for to do so would in effect place on the defendant the burden of disproving a fact essential to the plaintiff's case.

There was evidence from which the jury would have been warranted in finding that Kanavos had the ability to finance the purchase of the stock. Although he admitted that he was in financial difficulty during the relevant times, he had connections with people who might have assisted him. He testified

that he could have purchased the stock if the bank had given him timely notice of his rights. Moreover, the jury found that the apartment complex was worth $1,500,000 more than the principal balance of the first mortgage, and thus $780,000 more than Kanavos would have had to have paid the bank for the stock (the sale price of $760,000 less the $40,000 the bank owed him). This differential suggests that financing was not an impossibility for Kanavos. Considering Kanavos's admitted financial difficulties at that time, the question of his ability to purchase the stock (or to sell his rights to another) may depend on whether the earnings of the apartment complex were sufficient to support some arrangement to finance the acquisition within the various limitations applicable under the federally guaranteed first mortgage (assuming it were not to be discharged in the process).

The question of Kanavos's ability to purchase the stock should have been submitted to the jury. We see no reason, however, for a retrial of those issues already decided by the jury. We remand the case for a retrial on the question whether, if he had had proper notice of his right to purchase the stock, Kanavos would have been ready, willing, and able to do so during the option period.

*So ordered.*