Argued and submitted January 20, affirmed June 1, 2017

MACADAM BAY
HOMEOWNERS ASSOCIATION,
an Oregon nonprofit corporation,
*Plaintiff-Respondent,*

*v.*

David SOYSTER,
Joy Soyster, and James Idle,
*Defendants-Appellants.*

Multnomah County Circuit Court
140404907; A158960

397 P3d 587

Terrance J. Slominski argued the cause for appellants. With him on the briefs were David W. Venables and Slominski & Associates.

Charles R. Williamson argued the cause and filed the brief for respondent.

Before Armstrong, Presiding Judge, and Tookey, Judge, and Shorr, Judge.

## SHORR, J.

Defendants David Soyster, Joy Soyster, and James Idle appeal from a general judgment granting declaratory relief to plaintiff Macadam Bay Homeowners Association (Macadam Bay). On appeal, defendants assign error to the trial court's grant of Macadam Bay's motion for summary judgment. Defendants contend that the trial court incorrectly concluded, as a matter of law, that defendants could not exercise the options contained in the leases that they obtained from Macadam Bay because those options were subject to an unfulfilled condition precedent.[1] We disagree with defendants and conclude that the trial court correctly determined that defendants could not exercise their options. As a result, the trial court properly granted summary judgment to Macadam Bay and issued a declaratory judgment in its favor. Consequently, we affirm.

Because defendants assign error to the trial court's grant of summary judgment, we view the evidence and all reasonable inferences that may be drawn from the evidence in the light most favorable to the party opposing summary judgment—here, defendants. *Jones v. General Motors Corp.*, 325 Or 404, 408, 939 P2d 608 (1997). On November 1, 1983, the State of Oregon (the state) leased to the City of Portland (the city) submerged and submersible land located on the Willamette River near SW Macadam Avenue in Portland so that a houseboat moorage could be constructed at that location (the DSL lease). That original DSL lease was to expire on October 31, 2013. On November 8, 1983, Macadam Bay entered into a lease (the upland lease) with the city for the "tract of land" directly up-bank from the submerged and submersible lands that had been conveyed to the city in the DSL lease. The upland lease also sublet the city's interest in the DSL lease to Macadam Bay. The upland lease was set to expire on November 8, 2013. The Macadam Bay moorage was completed in 1986, and, at that time, Macadam Bay entered into individual lease agreements (the slip leases)

---

[1] The disputed leases in this case have been assigned multiple times. For ease of reference, throughout this opinion we refer to Macadam Bay and its predecessors in interest as "Macadam Bay" and defendants and their predecessors in interest as "defendants."

for houseboat slips with defendants. Both of the slip leases expired on October 31, 2013.

The upland lease between the city and Macadam Bay contained an option to renew. It provided:

> "At the end of the term of this lease, if [Macadam Bay] is not then in default, [it] shall have the right, at [its] option, to renew [the] lease of these premises for a period of ten (10) years immediately consecutive to the end of the initial lease term. If such option is so exercised and [Macadam Bay] is not in default of the lease at the end of that renewal term, [it] shall then have the right, at [its] option, to lease the premises for a second immediately consecutive ten (10) year term. *** Immediately following [Macadam Bay's notice to the city of a desire to exercise either option], the parties shall promptly begin good-faith negotiations on the amount of money rent to be paid by [Macadam Bay] for the renewal period in question. If the parties do not agree *** on the amount of such rent, [the amount of rent will be determined by arbitration]."

Defendants' slip leases also contained options.[2] The slip leases stated:

> "[Macadam Bay's] existing leases with the City of Portland and the State of Oregon terminate on or about November 1, 2013. However, [Macadam Bay] may extend its leases for two additional 10-year terms. If and when [Macadam Bay] extends its leases with the City of Portland and the State of Oregon, and if Tenant is not then in default, Tenant shall have the right, at his option, to extend this Agreement ***."

The slip lease addendums also provided that "[Macadam Bay] will notify Tenant on or before August 1, 2013 if the first additional extension is available."

The DSL lease did not contain an option to extend; however, the city and the state entered into a new DSL lease in 2008 to expand the leased area to include a location

---

[2] There was some dispute in the trial court as to whether defendant Idle's slip lease actually contained an option. For the purposes of this opinion, we assume without deciding, as the lower court did, that Idle's slip lease did contain an option agreement, because, as we discuss below, whether he had an option does not matter because the conditions necessary for him to exercise that option were not met.

where two houseboats were moored that was not included in the original leasehold. Like the original DSL lease, the 2008 DSL lease only covered the "state-owned submerged lands" occupied by Macadam Bay. The new DSL lease is effective from November 1, 2007 to October 31, 2022, and contains an option to renew for an additional 15 years. The purpose of setting the expiration date of the 2008 DSL lease to October 31, 2022, was to allow Macadam Bay and the city to extend the upland lease in 2013 without having to go back to the state to create another new DSL lease "if Macadam Bay wishe[d] to extend their [upland] lease in 2013."

In accordance with the 2008 DSL lease, the city and Macadam Bay amended the upland lease to include the new boundaries covered by the DSL lease, but did not agree to extend the termination date of the upland lease and did not indicate in any way that Macadam Bay was planning to exercise its option to extend the upland lease.

Macadam Bay did not always own the moorage at issue in this case. In 1998, most of the owners of the floating homes that rented slips in the moorage organized Macadam Bay. Those owners, through Macadam Bay, then bought the moorage improvements and the lessee's interest in the upland lease from the moorage's previous owner for $1,701,000. When Macadam Bay began managing the moorage, every slip owner except for defendants chose to become members of the corporation and bought their slips. Defendants were given the option to become members of the corporation by buying their slips at that time as well; however, they chose not to. Though defendants decided not to join their neighbors in the homeowners association, Macadam Bay recognized defendants' right to continue as slip tenants under the terms of their leases, and allowed them to continue renting their slips at least through November 1, 2013, when, absent their options being exercised, their slip leases expired.

After taking over management of the moorage and purchasing their slips, members of Macadam Bay began to seek even more stability in their living situation. Before members could sell or refinance their homes, they were required to disclose to potential buyers and lenders that the upland lease with the city was terminating in November

2013 and, although two 10-year options to renew the lease existed, there was no guarantee that those options would be exercised or, if they were, what the new rent for the slips would be. That uncertainty made it difficult for members of Macadam Bay to sell or refinance their homes. As a result, in 2011, Macadam Bay began attempting to find a more permanent home for the moorage. That process resulted in Macadam Bay purchasing a permanent easement from the city on September 10, 2013, over the land that it already occupied pursuant to the upland lease. Because Macadam Bay was able to purchase a permanent easement, it did not exercise its option to renew the upland lease with the city.

The 2013 easement purchased by Macadam Bay provides that, in exchange for a payment of $400,000, Macadam Bay has an easement "in gross" that "shall run with the land for the benefit of grantee, its successors and assigns." Further, it provides that the easement will only terminate "if the use of the easement property as a floating home moorage shall be permanently abandoned, and all floating homes shall have been removed from the moorage."

On September 27, 2013, Macadam Bay provided defendants notice by letter that the upland lease with the city was not being extended and that, as a result, the options to extend their slip leases were not available. Macadam Bay also notified defendants that, though defendants' slip leases expired on October 31, 2013, it would allow defendants to occupy their slips until January 2014 to allow defendants a "notice period equivalent to that provided for by the Option to Extend." Further, Macadam Bay notified defendants that it was unable to provide defendants with notice on August 1, 2013—the date that notice was due under the slip leases "if the first additional extension [with the city] [was] available"—because, on that date, it was still uncertain whether the upland lease would be extended or if an easement agreement would be purchased from the city.

Macadam Bay eventually sought a declaratory judgment that defendants' slip leases had expired. Defendants denied that their slip leases had expired, and counterclaimed for a declaratory judgment stating so and for specific performance of their slip leases and options.

Both Macadam Bay and defendants filed motions for summary judgment. Defendants argued in their motion for summary judgment that (1) the condition precedent necessary to exercise their options to extend their slip leases was fulfilled when the state and the city entered into a new DSL lease in 2008 and Macadam Bay and the city amended the upland lease in accordance with the new DSL lease; (2) even if the condition precedent was not fulfilled, Macadam Bay unduly caused the condition's nonoccurrence and, thus, cannot benefit from that nonoccurrence; (3) Macadam Bay's 2013 easement from the city is the required extension of the upland lease; and finally, (4) by negotiating for an easement, rather than a lease extension, Macadam Bay breached its covenant of good faith and fair dealing with defendants.

The trial court granted Macadam Bay's motion for summary judgment, denied defendants', and entered a declaratory judgment in favor of Macadam Bay. On appeal, defendants assign error to the trial court's grant of Macadam Bay's motion for summary judgment, making the same arguments to us that it made to the trial court.

When reviewing a grant of summary judgment, our purpose is to determine whether the trial court correctly concluded that "there is no genuine issue of material fact and the moving party [was] entitled to judgment as a matter of law." *Robinson v. Lamb's Wilsonville Thriftway*, 332 Or 453, 455, 31 P3d 421 (2001). When both parties concede that no genuine issues of material fact exist, a case "presents only legal issues," and, consequently, "we review [the trial court's decision] for errors of law." *Machado-Miller v. Mersereau & Shannon, LLP*, 180 Or App 586, 589, 43 P3d 1207 (2002). Here, defendants do not contend that a genuine issue of material fact exists, but rather that the trial court legally erred when determining that, after interpreting the various leases in this case, Macadam Bay was entitled to judgment as a matter of law. We disagree with defendants and, accordingly, affirm.

We begin by observing that the trial court correctly concluded that defendants' options to extend their slip leases were subject to a condition precedent—that Macadam Bay renew its existing leases with both the city

and the state—and that condition was not met. A condition precedent is a contractual condition that is based on "an event, not certain to occur, which must occur, unless its non-occurrence is excused, before performance under a contract becomes due." *Wright v. State Farm Mutual Automobile Ins. Co.*, 223 Or App 357, 370 n 14, 196 P3d 1000 (2008). To determine whether a term in a contract is a condition precedent, we look to "the parties' intent." *Pioneer Resources, LLC v. Lemargie*, 175 Or App 202, 205, 27 P3d 520 (2001), *rev den*, 333 Or 399 (2002). To determine intent, we first look "to the language of the written instrument itself and consider[] its text in the context of the document as a whole." *Id.* at 205-06. If the text of the document is "unambiguous, the analysis ends, and we interpret the provision's meaning as a matter of law." *Id.* at 206.

In this case, the text of defendants' options to renew their slip leases is unambiguous. They state, *"If and when* [Macadam Bay] extends its leases with the [city] and the [state], * * * Tenant shall have the right, at his option, to extend this Agreement * * *." (Emphasis added.) The phrase "if and when" unambiguously demonstrates the parties' intent at the time of drafting to make defendants' options conditional on Macadam Bay extending its leases with the city and the state. *See Webster's Third New Int'l Dictionary* 1124 (unabridged ed 2002) (defining "if" as "on condition that"); *Friedman v. Bridger*, 246 Or 549, 553, 426 P2d 859 (1967) (noting that, under an "if and when" clause in a contract, "defendants will be entitled to recover" only "if" the condition of the "if and when" clause was met). Thus, Macadam Bay "extend[ing] its leases" with the city and the state was a condition precedent that had to be fulfilled before defendants could exercise their options to extend their leases.

That condition was never fulfilled. As discussed above, only the DSL lease between the state and the city was extended. Macadam Bay did not extend the upland lease with the city. Instead, it purchased an easement. As a result, because the condition precedent did not occur, defendants' options to renew their slip leases never vested, and the trial court did not err in granting Macadam Bay's motion for summary judgment.

As noted above, defendants make four arguments contesting that conclusion. Defendants first argue that the upland lease was extended when the city and the state extended the DSL lease in 2008, and Macadam Bay and the city amended the upland lease in accordance with the 2008 DSL lease. That is not true.

The 2008 amendment to the upland lease based upon the 2008 DSL lease was not an extension of the term of the upland lease. The 2008 amendment only expanded the property conveyed by the upland lease to reflect the property being leased from the state under the 2008 DSL lease and increased the rent due under the upland lease based upon the increased size of the leasehold. It expressly did not change any other terms of the lease, including the expiration date. The 2008 amendment to the upland lease states, "Except as set forth in this Amendment or in previous amendments, all the terms and conditions of the Lease shall continue in full force and effect throughout the term of the Agreement." Thus, because neither the 2008 DSL lease nor the 2008 amendment to the upland lease was an extension of the term of the upland lease, the trial court correctly concluded, as a matter of law, that the condition precedent to defendants being able to exercise their options never occurred.

Defendants next contend that, even if the condition precedent never occurred, Macadam Bay cannot benefit from that nonoccurrence because Macadam Bay was the only party who could attempt to extend the upland lease and failed to make an effort to do so. Defendants correctly point out that the Supreme Court has previously held that "[i]t is a principle of fundamental justice that if a promisor is himself the cause of [a] failure of performance, either of an obligation due him or of a condition upon which his own liability depends, he cannot take advantage of [that] failure." *Public Market Co. v. Portland*, 171 Or 522, 588, 130 P2d 624 (1942). However, that rule does not apply in this case.

The *Restatement (Second) of Contracts* section 245 comment a (1981) recognizes an exception to the above rule when "the risk of *** lack of cooperation [by one party in bringing about a condition] was assumed by the other

party." That exception comports with our duty to "interpret the wording of a contract to effectuate the intentions of the parties, as those intentions can be determined from that wording and other relevant circumstances." *Care Medical Equipment, Inc. v. Baldwin*, 331 Or 413, 418-19, 15 P3d 561 (2000). If the wording of a contract unambiguously indicates that the parties intended that one of them was expressly assuming the risk that the other may not choose to proceed with a condition in the contract, we must give effect to that intent.

Here, the parties' intent that defendants assumed the risk of Macadam Bay choosing not to renew the DSL or upland leases is clear from the wording of the slip leases. The slip leases state:

"[Macadam Bay] *may* extend its leases for two additional 10-year terms. *If and when* [Macadam Bay] extends its leases with the [city] and the [state], and if Tenant is not then in default, Tenant shall have the right, at his option, to extend this Agreement * * *."

(Emphases added.) The use of the conditional word "may" and conditional phrase "if and when" to describe Macadam Bay's potential actions indicates an intent by the parties to give Macadam Bay the discretion to choose whether to attempt to extend its leases with the city and the state. *See Webster's* at 1124, 1396 (defining "may" as "have the ability or competence to," "have permission to" or "be in some degree likely to" and "if" as "on condition that"). It is clear from the text of the slip leases that the parties all recognized that the extension of those leases was contingent on Macadam Bay choosing to exercise its option to extend its upland lease with the city. Further, the text of the slip leases mirror the wording of other contracts where one party has assumed the risk that another party may not proceed with an optional right given it under the contract. *See, e.g., Dennis v. McLean*, 53 Or App 282, 284 n 2, 631 P2d 839, *rev den*, 291 Or 771 (1981) (upholding right of first refusal that stated that, "[i]f Lessor should decide to sell said real property * * *, Lessees shall have the first right to refuse the purchase of the property" (omission in *Dennis*; internal quotation marks omitted)). To read those contracts as defendants would like us to would require us to interpret the word "may" as meaning

"shall attempt to" and ignore the conditional nature of the phrase "if and when." As a result, we conclude that, because the text of the contracts evinces the parties' intent that defendants assumed the risk that Macadam Bay may not renew its leases with the city and the state, the trial court correctly concluded that Macadam Bay was under no obligation to attempt to renew the upland lease.

Defendants next argue that their options are enforceable because Macadam Bay fulfilled the condition precedent necessary for their options to vest when it bought the easement from the city. We disagree. Specifically, defendants contend that the "easement agreement" between Macadam Bay and the city is actually a lease and, thus, constitutes the lease extension necessary for their options to vest. That argument is foreclosed by the text of the slip leases.

Whether the easement agreement is an easement or a lease is immaterial to this case. The text of the option agreements contained in the slip leases is unambiguous:

> "[Macadam Bay's] *existing* leases with the [city] and the [state] terminate on or about November 1, 2013. However, [Macadam Bay] may extend its leases for *two additional 10-year terms*. If and when [Macadam Bay] extends its leases with the [city] and the [state], * * * [defendants] shall have the right, at [their] option, to extend this Agreement * * *."

(Emphases added.) Consequently, defendants only "ha[d] the right, at [their] option, to extend" their slip leases "[i]f and when" Macadam Bay extended its *"existing* leases" with the city and the state for either of the two potential "10-year terms." (Emphasis added.) As a result, whether the easement agreement between Macadam Bay and the city is, as a legal matter, an easement or a lease does not bear on whether the condition precedent to the vesting of defendants' options was fulfilled.[3] What matters is whether the easement agreement is an extension of the *existing* upland lease between

---

[3] Thus, while we use the terms "easement" and "lease" below, we use those terms only to reflect the names of the documents in the record, and we do not make any legal determination regarding whether those documents reflect a true easement or lease.

Macadam Bay and the city. Because the easement agreement is a new agreement, independent of the upland lease and because of the substantial differences in the terms of the upland lease and the easement agreement, we are convinced that the easement agreement is not that extension.

First, and most notably, the easement agreement is not, and does not purport to be, an amendment to or an extension of the existing upland lease with the city. Instead, the easement agreement is a new contract, with new terms, completely independent from the upland lease.

Second, the terms of the easement agreement and the upland lease are different. For instance, the duration of any upland lease extension—as reflected in the slip leases— and the duration of the easement agreement are substantially different. Any extension of the existing upland lease, by the slip leases' and the upland lease's terms, was intended to be for a "10-year term[]" with the option to extend for an additional "10-year term[]," for a total potential extension of 20 years. In contrast, the easement agreement conveys a perpetual interest to Macadam Bay that only terminates when "the use of the easement property as a floating home moorage shall be permanently abandoned, and all floating homes shall have been removed from the moorage."

Further, the method of payment for any upland lease extension and the easement agreement are substantially different. Just as the slip leases reflected the parties' expectation that any extension of the upland lease would be for a 10-year term, they also reflected the expectation that such an extension would be subject to periodic rent. The slip leases note, "The rent for each additional 10-year term will be * * * monthly base rent," which includes "1/37th of the total" "[l]ease payments on the leases with the [city] and the [state]." (Underscoring in original.) In contrast, the easement agreement was purchased by Macadam Bay for the one-time payment of $400,000.

In addition, the easement agreement gives Macadam Bay substantially more control over what it does with the property and its interest in the property than the upland lease did. For instance, the upland lease provided that, before Macadam Bay could construct any improvements on

the leased property, they had to both provide the city with "detailed plans and specifications" of the proposed improvements and gain approval from the city for those changes. In contrast, the easement agreement contains no such provision. Further, the upland lease—and, as a result, any extension of it—made any alienation of Macadam Bay's lease interest subject to approval by the city. In contrast, the easement agreement provides, "This easement shall be in gross, and shall run with the land for the benefit of [Macadam Bay], its successors and assigns," with no restrictions on how Macadam Bay may dispose of its interest. *See Sunset Lake v. Remington*, 45 Or App 973, 977, 609 P2d 896 (1980) ("Easements in gross which have commercial value are assignable."); *Sweetland v. Grants Pass Power Co.*, 46 Or 85, 91-92, 79 P 337 (1905) ("[A]n easement in gross, where the grant is to the grantee, his successors and assigns, is capable of assignment[.]").

Taken together, all of those differences convince us that the easement agreement is *not* the extension of the upland lease required by defendants' slip leases. Consequently, Macadam Bay did not fulfill the condition precedent necessary for defendants' options to vest by entering into that agreement, and the trial court did not err in concluding, as a matter of law, that defendants could not exercise their options to extend the slip leases.[4]

Finally, defendants argue that, by not attempting to renew the upland lease, Macadam Bay violated its duty of good faith and fair dealing. "[T]here is an obligation of good faith in the performance and enforcement of every contract." *Best v. U.S. National Bank*, 303 Or 557, 561, 739 P2d 554 (1987). Further, the duty of good faith is present in every lease. *Pacific First Bank v. New Morgan Park Corp.*, 319 Or 342, 353, 876 P2d 761 (1994). However, "a party invoking an express contractual right does not, merely by doing so, violate the duty of good faith." *Stevens v. Foren*, 154 Or App

---

[4] We also note that defendants presented no evidence that Macadam Bay entered into an easement agreement instead of extending its upland lease in a bad faith attempt to nullify defendants' options. In contrast, Macadam Bay presented a substantial amount of evidence indicating that Macadam Bay entered into the easement agreement to provide its members more stability so that they could more easily sell and mortgage their floating homes.

52, 58, 959 P2d 1008, *rev den*, 327 Or 554 (1998). In fact, the duty of good faith does not even "provide a remedy for an unpleasantly motivated act that is permitted expressly by contract." *Id.*

Here, as we discussed at length above, Macadam Bay had the contractual right to choose whether to attempt to extend its leases with the city and the state. Defendants expressly assumed the risk that Macadam Bay may not do so, and Macadam Bay chose not to. Exercising that right here did not constitute a violation of Macadam Bay's duty of good faith. Consequently, defendants are not entitled to a remedy based upon Macadam Bay's actions. As a result, the trial court did not err when it concluded that, as a matter of law, defendants could not exercise their options because Macadam Bay did not violate its duty of good faith.

In summation, the trial court correctly concluded, as a matter of law, that defendants could not exercise their options under their slip leases because those options were subject to an unfulfilled condition precedent. As a result, the trial court did not err in granting Macadam Bay's motion for summary judgment and issuing the declaratory judgment in favor of Macadam Bay.

Affirmed.