**Cecil O. ECKARD and Marilyn F. Eckard, his wife, Plaintiffs and Respondents,**

v.

**Gale G. SMITH and Joy T. Smith, his wife, Defendants and Appellants.**

**No. 13567.**

Supreme Court of Utah.

Oct. 18, 1974.

Richard W. Perkins, of Turner & Perkins, Salt Lake City, for defendants-appellants.

Walter P. Faber, Jr., and David Lloyd, of Watkins & Faber, Salt Lake City, for plaintiffs-respondents.

ELLETT, Justice:

This appeal is from a judgment below whereby the Smiths were ordered to ·con-

vey one of the two units in a duplex , owned jointly by them to the Eckards.

The Eckards had resided in the unit for a year under a printed form of a Residential Rental Agreement signed by themselves and by Mr. Smith. Written on the printed form were the following additional terms:

\* \* \* \* \* \*

4. Lesser [sic] hereby agrees to grant lessee (Cecil Eckard) first option to buy said duplex, single unit or both if available at termination of lease period. The sale price shall be (78,900.00) plus carpets, drapery & landscaping costs.

\* \* \* \* \* \* ,

6. The entire yrs. lease payment will be credited to sale price if leassee [sic] purchases said duplex.

Prior to the expiration of the term, the Eckards demanded that both Mr. and Mrs. Smith convey to them the unit in which they had been living for one half of $78,900.00 plus carpets, etc., less the amount of rent paid for the year.

One wonders if one half of a duplex is worth one half as much as the entire unit would be worth. Common walls, common roof, etc., would likely depreciate each half so that the remaining unit might not sell for as much as the first unit did. Realty has always been held to be unique, and one unit of a duplex is different from the other: Be it a north-facing unit or a south-facing one or an east- or west-facing unit, each would have some difference, and we cannot say that the two would be of equal value. To say they would be is to make a contract which the parties never made. The only reading one can get out of the instrument is that for one unit or two the sale price shall be "($78,900.00)." [1]

There is also ambiguity regarding "carpets, drapery & landscaping costs." Does it mean original cost, cost less depreciation, or replacement cost? Since it is not clear what was meant, the court could not enforce the agreement until it chose a value which to the court seemed proper; it could not decide it from the agreement itself.

A more serious problem presents itself in the use of the words "first option to buy said duplex, . . . if available at termination of lease period."

In In the case of Tamura v. DeIuliis [2] the court said:

. . . Furthermore, the fact that the lessee was to have the first option to buy indicates to our mind that the parties contemplated the usual situation whereby if the owner receives an offer from a third party, the lessee, or the person having the first option to buy, shall have a right to meet any such bona fide offer of the third party. . . .

In the instant matter, it made no difference what the offered price might be from a third person; the lessee could buy for $78,900.00, if the property was available for sale.

Our Utah case of Chournos v. Evona Inv. Co. [3] involved a "first opportunity of purchasing the said premises, upon the same price and terms the lessor would receive of other parties." This court at page 340 of the Utah Reports said:

By the lease, the Company bound itself to extend an opportunity of purchase to the lessees, when and if the Company received an acceptable offer for the property. . . . However, that provision in the lease, standing alone, and without action by the Company, did not constitute an option in favor of the lessees.

In Falkenstein v. Popper [4] a lease contained the following: " . . . (b) For the remaining period of said term, . . . Lessee shall be given the first opportunity

1. While no dollar sign is affixed, neither party claims that it means anything other than $78,900.00.

2. 203 Or. 619, 281 P.2d 469, 472 (1955).

3. 97 Utah 335, 93 P.2d 450 (1939).

4. 81 Cal.App.2d 31, 183 P.2d 707 (1947).

to purchase . . ." The lessee undertook to exercise the option under (b), and the court said, " . . . the lessee in subdivision (b) was given the first opportunity to purchase in the event that during the balance of the leased term, the lessor decided to sell."

In Stein v. Reising[5] a lease provision was as follows: "Lessee will be given first option to purchase property within year lease if in effect at a price of $8,000.00." It was there held by the court that " . . . it could only be said that Mr. Stein had a conditional or preferential and not an absolute option to purchase the building."

The case of Burback v. Sinram[6] is to like effect. The court held the option conditional upon the lessor's desire to sell.

The New York case of R. I. Realty Co. v. Terrell[7] is a leading case. There the lessee was given "first privilege to buy" property for a stated price. The court said:

The use of the words "first privilege" indicates that the parties must have had in mind some other opportunity of the lessor to sell and that the lessor was not prevented from selling to another if he desired. It bound the lessor, however, not to sell to another for that price without first giving the lessee the opportunity or privilege to purchase the property at the price specified, . . . The words "first privilege" did not grant an absolute option to the lessee to purchase the premises at any time during the term of the lease. The right of the lessee to purchase depended upon the lessor's desire to sell. . . . To construe the clause in accordance with the contention of the respondent would require that the word "first" be eliminated. With that word eliminated, the privilege to buy would be absolute and enforceable. . . .

The weight of authority where there is nothing more is to the effect that a "first option to buy" is merely a conditional option to be exercised only in case the owner desires to sell.

The meaning of the word "available" is also subject to two constructions. Does it mean "not sold to somebody else" or does it mean "if it is for sale"? If the latter, there is no option to be exercised, since the owner does not wish to sell. If it means the former, then it appears clearly that the Eckards had no firm option because it could be defeated by the owner selling it to another.

■ The trial court enforced a contract which the parties never made. Specific performance cannot be granted unless the terms are clear, and that clarity must be found from the language used in the document.[8]

■ There is a further reason why the judgment cannot be affirmed. The defendant Joy T. Smith was a joint owner of the land. She signed neither the lease nor the so-called option. The only estoppel which could be asserted against her would be the lease agreement for which the Eckards paid cash. She makes no complaint about that, as the Eckards had their full term of peaceful possession. She cannot, however, be deprived of her title to the realty in view of the provisions of the Statute of Frauds.[9]

■ The dissent mentions a sale by the Smiths to the Eckards of one of the units subsequent to trial. Both parties have requested us to decide the issue presented at

5. 359 Mo. 804, 224 S.W.2d 80 (1949).

6. 237 N.Y. 600, 143 N.E. 759 (1924).

7. 254 N.Y. 121, 172 N.E. 262 (1930).

8. Pitcher v. Lauritzen, 18 Utah 2d 368, 423 P.2d 491 (1967) ; Bowman v. Reyburn, 115 Colo. 82, 170 P.2d 271 (1946).

9. Sections 25–5–1 and 25–5–3, U.C.A.1953.

trial, and we should do our duty and answer the contentions as raised on this appeal. Matters occurring after trial are not properly before us. For all we know, the Eckards bought the one unit of the duplex at an arm's length transaction and may want to buy the other unit under the terms fixed by the trial court. That would be a pretty neat maneuver if they could deduct the $4,500.00 rent paid from the arm's length deal, as the dissent says, and then by having this court affirm the judgment of the trial court get the same $4,500.00 deducted from the other unit. That would give them $9,000.00 deducted from the claimed option which only allowed them $4,500.00 if they bought both units.

The judgment is reversed, and costs are awarded to the appellants.

CALLISTER, C. J., and CROCKETT, J., concur.

HENRIOD, Justice (dissenting).

On June 14, 1971, the Eckards, as buyers, and Gale G. Smith, as seller, executed a filled-in printed form Residential Rental Agreement. Gale's co-defendant wife, Joy T. Smith, was not signatory thereto. The agreement contained certain salient provisions around which this litigation revolves:

It was for one year, at $375.00 per month. It provided that "Lessor hereby agrees to grant lessee (Cecil Eckard) first option to buy said duplex, single unit or both if available at termination of lease period. The sale price shall be (78,900.00) plus carpets, drapery & landscaping costs. . . . The entire yrs. lease payment will be credited to sale price if lessee purchases said duplex."

The Eckards paid the entire year's rental in advance. It seems obvious that they did this to *assure* an opportunity to purchase the property, since there is no apparent reason why they should forego interest on $4,500.00 when under the terms of the lease, without the option, they could have paid out in monthly installments of $375.00. The trial court, under the evidence, found a binding contract and liability to convey

under its terms and the right effectively to exercise the option. The trial court in his summation more or less chided the male defendant, who had been in the contracting business for nigh onto a quarter century, for his attempt to beg off on a theory that his wife, not having signed the agreement thus liberated him from his promise,—even though the evidence is clear by *her* testimony and that of others that she freely and repeatedly consented and agreed to the unorthodox business dealing of signing the document without joining his joint tenant wife. The findings of the trial court were supported by substantial admissible evidence, and citation of authority to conclude that his findings should be honored would serve no useful purpose.

Everything said in the main opinion by way of general principle may be true, but the course of conduct of the principals in this litigation fully justifies the judgment of the trial court.

Apart from the arguments urged in the main opinion, and assuming, arguendo, that Mrs. Smith should not be a subject to specific performance, there is no reason that Mr. Smith should be spared or why he should not be required to pay dearly in damages if, by concealing himself behind his wife's robes, he should force her and the Eckards to become perhaps unwilling co-owners.

Also, apart from everything else that has been said above, the Smiths compounded confusion by completing and making fait accompli the transaction under the terms claimed for by the Eckards, for which specific performance was adjudged by the trial court when, on *January 3, 1974,* a *whole week* before they filed their Notice of Appeal on *January 10, 1974,* they both, Gale G. Smith *and* Joy T. Smith, executed (and had their signatures notarized on said date) a Warranty Deed for *"One-half ½* of a duplex described as follows: Beginning . . . thence . . . to a point *on the Centerline* of a party wall . . . thence . . . to the point of beginning." This Warranty Deed was duly de-

livered to the Eckards and accepted by them in exchange for a certified check for $37,744.00, accepted and endorsed by both defendants, which amount if doubled, would equal $75,488.00. Adding one half (½) of the $4,500.00 advance payment, which would be $2,250.00 to the $75,488.00, what do you get except $78,738.00,—which is almost exactly the stipulated price of $78,900.00 for the duplex found in the Residential Rental Agreement? These figures and the findings of the court belie the statement of the main opinion that "The trial court enforced a contract which the parties never made,"—although the quoted statement would be true as to *Mrs. Smith only,*—if it further be assumed that she was not bound by her representations as to satisfaction in the terms of the agreement, —which the trial court, however, did not assume at all. It would appear that by their actions the Smiths eliminated any defense of estoppel; that on the contrary, they waived it and completely ratified the terms asserted by the Eckards, which were enforced by the court almost exactly as finally consummated. No argument could be urged that all this was not a part of the record, because *the defendants put it in the record,*—before they appealed. (Emphasis added.)

It would be a strange conclusion both in the area of procedure and of administering equity, if people, after having complied with the very terms of a judgment entered against them could consummate the transaction which the court had found to be the fact, but thereafter, by the simple device of filing a timely notice of appeal could call for and claim a brand new ball game. It is obvious that this whole case was and is moot,—an unorthodox and abortive attempt to invoke the jurisdiction and consume, without merit, the time of the courts. The trial court should be affirmed with costs to the Eckards.

TUCKETT, J., concurs in the views expressed in the dissenting opinion of HENRIOD, J.