2007 UT 10

**H.C. MASSEY and Betty Massey,
Plaintiffs and Petitioners,**

v.

**Kenneth A. GRIFFITHS, BKB LLC, 12 X
12 L.L.C., Aaron B. Buttars, Brenda L.
Buttars, Adele B. Lewis., Defendants
and Respondents.**

No. 20051028.

Supreme Court of Utah.

Jan. 23, 2007.

Frank S. Warner, Ogden, for petitioners.

Ray G. Martineau, Anthony R. Martineau, Douglas L. Stowell, Lloyd R. Jones, Brett D. Cragun, Salt Lake City, M. Darin Hammond, Ogden, for respondents.

DURHAM, Chief Justice:

## INTRODUCTION

¶ 1 This case involves a suit to quiet title to a tract of land in Weber County that the Masseys purchased at tax sales. The Masseys brought the suit to quiet title in the property after one of the Defendants constructed a building on what the Masseys believed was their property under the tax deeds. In response to the Masseys' complaint, Defendants filed motions for summary judgment. The district court granted Defendants' motions, and the court of appeals upheld the district court's decision. We affirm.

## BACKGROUND

¶ 2 On or about September 10, 1993, Frances B. Hanks conveyed a tract of land (the Griffiths' property) to Kenneth A. Griffiths by a warranty deed, which was recorded on September 23, 1993. Mr. Griffiths conveyed

the property to BKB, L.L.C. (BKB) by warranty deed dated and recorded January 24, 1997. BKB then conveyed the property to 12 X 12, L.L.C. (12 X 12) by quitclaim deed dated October 26, 2000, and recorded November 1, 2000.

¶ 3 Adele B. Lewis owned a tract of land (the Buttars' property) to the south of the Griffiths' property from 1952 until 1994. In 1994, Ms. Lewis conveyed her property to her daughter, Brenda Buttars, and her daughter's husband, Aaron Buttars. Mr. Griffiths, BKB, 12 X 12, Ms. Lewis, and the Buttars are the defendants in this lawsuit.

¶ 4 At all times, Defendants or their predecessors in interest believed that the Griffiths' and Buttars' properties abutted one another, sharing a boundary marked by "long established fence lines." Due to this belief, they occupied the land up to the fence for at least twenty years before the Masseys filed their complaint. In addition, Defendants or their predecessors timely paid and discharged all real property taxes that were levied upon their properties.

¶ 5 The current dispute relates to tax deeds acquired by H.C. and Betty Massey in 1986 and 1992. The legal description of the property conveyed by these tax deeds purportedly straddles the fence line establishing the boundary between the Griffiths and Buttars' properties. Based on these tax deeds, the Masseys brought suit to quiet title against Defendants.

¶ 6 Defendants moved for summary judgment, arguing that the Masseys' tax deeds descended from a wild deed, that Defendants had occupied the property for over twenty years, and that Defendants had paid all taxes on the property. The Masseys conceded that Defendants had fully paid all taxes for which they had received tax notices and had occupied the disputed property. The district court determined that in order for the Masseys to withstand summary judgment, "they [had to] show the property they [were] claiming did not have taxes assessed and paid and was different land than [the land on which] taxes were paid." The Masseys were unable to produce such evidence, and as a result, the district court concluded that "[n]one of the legal descriptions ... in the tax deeds cov-

er[ed] any real property that the defendants and their predecessors in interest ha[d] not possessed, occupied and paid taxes on." The district court therefore granted summary judgment in favor of Defendants.

¶ 7 The Masseys appealed the district court's order to the Utah Court of Appeals. *Massey v. Griffiths,* 2005 UT App 410, 131 P.3d 243. The court of appeals affirmed the district court's order, concluding that there was "[n]o dispute of material fact ... as to whether Defendants paid the property taxes assessed on the property they had long occupied." *Id.* ¶ 10. In explaining its holding, the court of appeals noted that "the Masseys still ha[d] not produced any evidence that Defendants were delinquent in paying property taxes assessed on [the disputed] portion" of the property. *Id.* ¶ 11. Thereafter, the Masseys filed a petition for certiorari review, which we granted.

## STANDARD OF REVIEW

¶ 8 "When reviewing a case on certiorari, we review the court of appeals' decision for correctness." *The View Condo. Owners Ass'n v. MSICO, L.L.C.,* 2005 UT 91, ¶ 17, 127 P.3d 697. This inquiry focuses on "whether [the court of appeals] correctly reviewed the trial court's decision under the appropriate standard of review." *Id.* In this case, the court of appeals reviewed the district court's grant of summary judgment to Defendants. Summary judgment is appropriate where "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Utah R. Civ. P. 56(c). Therefore, when an appellate court reviews a district court's grant of summary judgment, "the facts and all reasonable inferences drawn therefrom [are viewed] in the light most favorable to the nonmoving party," *Fericks v. Lucy Ann Soffe Trust,* 2004 UT 85, ¶ 2, 100 P.3d 1200, while the district court's legal conclusions and ultimate grant or denial of summary judgment are reviewed for correctness, *MSICO,* 2005 UT 91, ¶ 17, 127 P.3d 697.

## ANALYSIS

¶ 9 We granted certiorari in this case on the question of whether a deed acquired at a

tax sale takes priority over ownership acquired under the doctrine of boundary by acquiescence. From the parties' briefs and oral arguments, however, it is clear that the outcome of this case depends entirely upon the validity of the tax deeds that are the source of the Masseys' claim to title. Accordingly, we find it unnecessary to discuss the relevance of the doctrine of boundary by acquiescence.[1] Instead, the dispositive question in this case is whether there is a genuine issue of fact as to the validity of the Masseys' tax deeds.

¶ 10 A county may sell at a tax sale only land "on which a[tax] delinquency exists." *See* Utah Code Ann. § 59–2–1351(1)(a) (2004) ("[T]he county auditor shall select a date for the tax sale for all real property on which a delinquency exists."). Accordingly, we stated in *Tintic Undine Mining Co. v. Ercanbrack,* 93 Utah 561, 74 P.2d 1184 (1938), that "[n]o validity can attach to any [tax] sale except of the property assessed and delinquent for failure to pay the tax levied on the assessment as made." *Id.* at 1189; *see also Hayes v. Gibbs,* 110 Utah 54, 169 P.2d 781, 786 (1946) ("[A]ssessment is the basis of the tax title and only that interest which was properly assessed can be sold."); *Thirteen S. Ltd. v. Summit Vill., Inc.,* 109 Nev. 1218, 866 P.2d 257, 259 (1993) ("A sovereign may only convey in a tax sale an estate subject to delinquent taxes.").

¶ 11 Utah Code section 59–2–1351.1(9)(b) (2004) states that a tax deed is "prima facie evidence of the regularity of all proceedings subsequent to the date the taxes initially became delinquent and of the conveyance of the property to the grantee in fee simple." However, this statute creates only a presumption of validity, and the presumption can be rebutted by evidence that the tax sale was not valid. Indeed, we have stated,

> The main purpose of presumptions is to shift the burden either of producing evidence or of persuasion and thereby make sure that the evidence showing the basic facts will be held sufficient to support a finding for the favored party if the disfavored party fails to satisfy his burden. This does not mean that the fact finder may consider or weigh the presumption as evidence.

*In re Estate of Swan,* 4 Utah 2d 277, 293 P.2d 682, 690 (1956). Other courts have similarly held that a presumption does not have evidentiary value where evidence rebutting the presumption is offered. *See, e.g., United States v. Ross,* 92 U.S. 281, 285, 23 L.Ed. 707 (1876) ("Nowhere is the presumption [that a public official has performed his duty] held to be a substitute for proof of an independent and material fact."); *Sec. State Bank v. Benning,* 433 N.W.2d 232, 234 (S.D.1988) ("A presumption is not evidence of anything, and only relates to a rule of law as to which party shall first. go forward and produce evidence sustaining a matter in issue." (internal quotation marks omitted)).

¶ 12 In this case, Defendants filed motions for summary judgment arguing that the Masseys' tax deeds were not valid. To support their arguments,. Defendants presented the district court with evidence that the Masseys' tax deeds were descendants of a wild deed, that the Griffiths' and Buttars' properties abutted one another, and that Defendants had fully paid all tax notices that they had received. In response, the Masseys argued that Defendants' wild deed evidence was inconclusive because their experts were not qualified to testify about the validity of tax deeds. They also produced a topical land survey to show that there was a "gap" between the survey descriptions of the Griffiths' and Buttars' properties. According to the Masseys, this survey evidence showed that there was an area of land that the taxes paid by Defendants did not cover. The Masseys did not, however, offer any evidence to show that there were actually delinquent taxes on the alleged "gap" property. Moreover, the Masseys conceded that Defendants had paid all taxes for which they had received notices, and failed to show that any notices did not include the disputed property.

¶ 13 We hold that Defendants successfully rebutted the presumption that the Masseys'

---

1. We note that the scope of our grant of certiorari, while generally binding on the parties for purposes of argument, does not preclude us from treating dispositive issues that become apparent when the advocacy process is complete.

tax deeds were valid. Once Defendants rebutted the presumption, the Masseys had the burden to produce evidence that the tax sales were valid by showing that there was a tax delinquency on the property they claimed under the tax deeds. The Masseys failed to satisfy this burden. Although the Masseys' survey evidence created an issue of fact as to the possible existence of a gap in the property lines between the Griffiths' and Buttars' properties, the survey did not show that taxes had not been paid on the gap property prior to the tax sale. Moreover, the Masseys did not offer any other evidence showing that taxes had been delinquent on the property described in the tax deeds. Under our Rules of Civil Procedure, a party opposing summary judgment "may not rest upon the mere allegations or denials of the pleadings, but the response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Utah R. Civ. P. 56(e) (2006). Because the Masseys failed to provide evidence of delinquent taxes, they did not satisfy their burden under our rules. Therefore, they did not show that there was a genuine issue for trial with regard to the tax delinquency, and the district court appropriately granted summary judgment to Defendants.

## CONCLUSION

¶ 14 In this case, the Masseys failed to produce any evidence showing a tax delinquency on the disputed property and therefore have not carried their burden to show that the tax sales at which they acquired the property were valid. Because the Masseys failed to satisfy their burden of proof after Defendants overcame the presumption of validity, summary judgment was appropriate. Accordingly, we affirm the court of appeals' decision upholding the district court's order.

¶ 15 Associate Chief Justice WILKINS, Justice DURRANT, Justice PARRISH, and Justice NEHRING concur in Chief Justice DURHAM'S opinion.