2007 UT App 321

**CENTENNIAL INVESTMENT COM-
PANY, LLC, a Utah limited liability
company, Plaintiff and Appellant,**

v.

**Vanessa NUTTALL and Brook
L. Nuttall, Defendants
and Appellee.**

No. 20060519–CA.

Court of Appeals of Utah.

Oct. 4, 2007.

Rehearing Denied Nov. 6, 2007.

Shawn D. Turner, South Jordan, for Appellant.

Steven C. Tycksen and Chad C. Shattuck, Murray, and Jay L. Kessler, Magna, for Appellee.

Before GREENWOOD, Associate P.J., DAVIS and McHUGH, JJ.

## OPINION

McHUGH, Judge:

¶ 1 Centennial Investment Co., LLC (Centennial) appeals the decision of the district court granting summary judgment to Appellee, Vanessa Nuttall. We affirm. Both Judge Greenwood and Judge Davis concur in Sections I and II of this opinion. However, neither Judge Greenwood nor Judge Davis concurs in Sections III or IV, and thus, Judge Davis's opinion is the majority opinion on service of the request to remove the wrongful lien and attorney fees.

## BACKGROUND [1]

¶ 2 Brook L. Nuttall and Vanessa Nuttall, formerly husband and wife, were the joint owners of approximately five acres of real property in Herriman, Utah (the Herriman Property). The decree of divorce ending the Nuttalls' marriage, dated April 10, 2003, provided that they must mutually consent to any sale of the Herriman Property. The decree also provided that either of the parties could buy the other's interest in the Herriman Property.

¶ 3 On May 5, 2005, Brook executed a Real Estate Purchase Contract (REPC), accepting Centennial's offer to purchase the Herriman Property for $285,000. Vanessa was not a party to the negotiations leading up to the Centennial REPC and never executed that document. Nevertheless, Brook represented to Centennial that he had the authority to sell the Herriman Property. Centennial later learned of the divorce and attempted unsuccessfully to obtain Vanessa's signature on the Centennial REPC.

¶ 4 Shortly thereafter, Vanessa and Brook executed a separate REPC with Oakridge Development, whereby they agreed to sell the Herriman Property to Oakridge for $290,000. The Oakridge REPC, unlike the Centennial REPC, provided a real estate commission to a realtor who is also Brook's sister.

¶ 5 Centennial filed a complaint against the Nuttalls to enforce its rights under the Centennial REPC and also filed a notice of interest against the Herriman Property. Specifically, Centennial asserted claims for fraud and breach of contract against Brook and for breach of contract against Vanessa. In response, Vanessa filed a motion to dismiss the complaint and, on August 18, 2005, sent a letter to counsel for Centennial demanding the release of the notice of interest. On August 22, 2005, Vanessa filed a motion to nullify the notice of interest as a wrongful lien. *See* Utah Code Ann. § 38–9–7 (2005) (providing procedure to nullify a wrongful lien).

¶ 6 The trial court elected to treat the motion to dismiss as a motion for summary judgment and, after giving Centennial additional time to respond, granted summary judgment in favor of the Nuttalls on the breach of contract claims and also granted the motion to nullify the notice of interest as a wrongful lien. The court, however, denied summary judgment on the fraud claim against Brook. After an evidentiary hearing on damages, the trial court found that Vanessa had suffered actual damages in the amount of $805.41. The court then awarded

---

1. We state the facts in the light most favorable to Centennial, the nonmoving party. *See, e.g., Mas-* *sey v. Griffiths,* 2007 UT 10, ¶ 8, 152 P.3d 312.

Vanessa treble damages and attorney fees on her wrongful lien claim. *See id.* § 38–9–4(2) (Supp.2007) (providing for attorney fees, costs, and treble damages for failure to remove a wrongful lien). The trial court also certified its order in favor of Vanessa as final pursuant to rule 54 of the Utah Rules of Civil Procedure. *See* Utah R. Civ. P. 54. Centennial filed this appeal.

## ISSUES AND STANDARD OF REVIEW

¶ 7 Centennial first contends that the trial court erred when it granted summary judgment in favor of Vanessa on the breach of contract claim. "Summary judgment is appropriate only when (1) 'there is no genuine issue as to any material fact' and (2) 'the moving party is entitled to a judgment as a matter of law.'" *Poteet v. White,* 2006 UT 63, ¶ 7, 147 P.3d 439 (quoting Utah R. Civ. P. 56(c)). "We review the [trial] court's decision to grant summary judgment for correctness, granting no deference to the [trial] court." *Swan Creek Vill. Homeowners Ass'n v. Warne,* 2006 UT 22, ¶ 16, 134 P.3d 1122 (quotations omitted).

¶ 8 Centennial also challenges the trial court's award of treble damages and attorney fees to Vanessa under Utah Code sections 38–9–1 to –7. *See* Utah Code Ann. §§ 38–9–1 to –7 (2005 & Supp.2007) (the wrongful lien statute). "Questions of statutory interpretation are ... questions of law that are reviewed 'for correctness, giving no deference to the [trial] court's interpretation.'" *Pearson v. Lamb,* 2005 UT App 383, ¶ 5, 121 P.3d 717 (quoting *Board of Educ. v. Sandy City Corp.,* 2004 UT 37, ¶ 8, 94 P.3d 234).

## ANALYSIS

### I. The Centennial REPC was Unenforceable.

¶ 9 Centennial claims the trial court erred in holding that Vanessa's failure to execute the Centennial REPC rendered it unenforceable. According to Centennial, Brook's signature was sufficient to create a binding contract and to give Centennial an interest in the Herriman Property. We disagree.

¶ 10 Utah courts have repeatedly held that when real property is held in joint tenancy, the signature of both owners is necessary to satisfy the Utah statute of frauds. *See* Utah Code Ann. § 25–5–1 (1998) (codifying statute of frauds for real property); *see also Krantz v. Holt,* 819 P.2d 352, 353 (Utah 1991) ("If [ex-husband] retained a joint interest in the property, his written consent to the property's sale would be necessary, not because of any clause in the agreement, but because the Utah statute of frauds so requires."); *Williams v. Singleton,* 723 P.2d 421, 423 (Utah 1986) ("One joint tenant or tenant in common cannot bind his cotenant by a contract which he may make relating to the common property."); *Eckard v. Smith,* 527 P.2d 660, 662 (Utah 1974) (holding that statute of frauds prevented wife, as joint owner of property, from the obligation to convey building where she never signed the lease which contained the purported option to purchase). Centennial claims, however, that these cases stand only for the proposition that Brook could not convey Vanessa's interest. According to Centennial, the REPC was still enforceable to convey Brook's interest in the Herriman Property. Again, we disagree.

¶ 11 In *Williams v. Singleton,* the Utah Supreme Court affirmed the trial court's finding that "no binding agreement had been reached between the parties under an earnest money receipt and offer to purchase." 723 P.2d at 422. The buyers tendered $5000 in earnest money and made a written offer to purchase real property owned jointly by the sellers, as husband and wife. *See id.* at 422–23. The husband gave written authorization to his real estate agent to execute the contract, thereby accepting the offer to purchase. *See id.* The contract was never executed by the wife, either directly or through an authorized agent. *See id.* at 423. Subsequently, the buyers decided not to purchase the property and the sellers brought suit demanding that the $5000 earnest money be forfeited. *See id.* The trial court ruled in favor of the buyers, reasoning that the contract was unenforceable under the statute of frauds. *See id.* The Utah Supreme Court affirmed, holding that the wife's "failure to sign, either personally or through her agent, rendered the contract unenforceable." *Id.*

¶ 12 Despite the fact that the husband had executed the contract, the *Williams* court refused to hold the contract enforceable as to one joint tenant without the signature of the other, stating:

> [Buyers] offered to purchase the joint interest of [sellers], and [husband] negotiated for the sale of the joint interest. When [wife] did not ratify in writing [husband's] acceptance within the one-day period contemplated by the offer, *the offer never ripened into a contract,* and [buyers] were entitled to have the earnest money deposit returned to them.

*Id.* at 425 (emphasis added). Likewise, in this case, it is undisputed that Centennial offered to purchase and Brook offered to sell the joint interest in the Herriman Property.[2] Indeed, the essence of Centennial's remaining fraud claim against Brook is that Brook misrepresented his ability to deliver the entire joint interest. Thus, both parties agree that the negotiations were for the purchase of the joint interest of Vanessa and Brook. Without Vanessa's signature, the Centennial REPC could not convey that joint interest under the statute of frauds and "the offer never ripened into a contract." *Id.* Therefore, the trial court correctly granted summary judgment in favor of Vanessa on the breach of contract claim.[3]

## II. The Notice of Interest was a Wrongful Lien.

■ ¶ 13 Centennial next claims that the trial court erred when it awarded Vanessa

2. Centennial argues that the Utah Supreme Court's decision in *Eckard v. Smith,* 527 P.2d 660 (Utah 1974), stands for the proposition that Centennial is entitled to purchase Brook's interest in the Herriman Property even if Vanessa's interest could not be transferred without her written agreement. However, the language upon which Centennial relies is contained in the dissenting opinion in *Eckard, see id.* at 663 (Henriod, J., dissenting), and does nothing to diminish the persuasive effect of the more recent decision in *Williams v. Singleton,* 723 P.2d 421 (Utah 1986).

3. Centennial also argues that pursuant to the terms of the divorce decree, Brook could have purchased Vanessa's interest in the Herriman Property and conveyed the entire interest under the Centennial REPC. That argument, which asserts a breach by Brook, is not relevant to our inquiry into whether the trial court properly

treble damages, costs, and attorney fees under the wrongful lien statute. We agree with the trial court that the notice of interest was a wrongful lien.

■ ¶ 14 "Before a property owner may recover under the civil liability provisions of the wrongful lien statute, she must first show that the lien was wrongful." *Eldridge v. Farnsworth,* 2007 UT App 243, ¶ 48, 166 P.3d 639; *see also* Utah Code Ann. §§ 38–9–1 to – 7. The wrongful lien statute provides that a lien is not wrongful if "at the time it is recorded or filed" it is "expressly authorized by ... state or federal statute." Utah Code Ann. § 38–9–1(6)(a) (2005).[4] Centennial argues that the notice of interest was not a wrongful lien because Centennial had an interest in the Herriman Property. However, there is no reference in the record before the trial court or in the briefs filed with this court to any specific statute authorizing the notice of interest. Indeed, Centennial was unable to identify any specific statutory authority during oral argument.

¶ 15 Assuming, without deciding, that the provisions of the Marketable. Record Title Act, *see id.* §§ 57–9–1 to –10 (2000), allowing for a notice of interest under certain circumstances is relevant, we hold that the notice of interest filed by Centennial was not authorized by that statute and was therefore not exempt from the definition of a wrongful lien. The Marketable Record Title Act states:

> Any person claiming an interest in land may preserve and keep effective such interest by filing for record during the forty-

granted summary judgment in favor of Vanessa, and we do not address it.

4. A wrongful lien is defined as:

> any document that purports to create a lien or encumbrance on an owner's interest in certain real property and at the time it is recorded or filed is not:
> (a) expressly authorized by this chapter or another state or federal statute;
> (b) authorized by or contained in an order or judgment of a court of competent jurisdiction in the state; or
> (c) signed by or authorized pursuant to a document signed by the owner of the real property.

Utah Code Ann. § 38–9–1(6) (2005). Only subsection (a) is relevant to this analysis.

year period immediately following the effective date of the root of title of the person whose record title would otherwise be marketable, a notice in writing, duly verified by oath, setting forth the nature of the claim.

*Id.* § 57–9–4(1). This court has twice considered whether a notice of interest recorded against real property constituted a wrongful lien. *See Russell v. Thomas,* 2000 UT App 82, ¶ 12, 999 P.2d 1244 ("The issue is whether defendants' Notice of Interest was expressly authorized by [statute], and therefore falls within the exception set out in subsection (a) [of the wrongful lien definition]."); *Commercial Inv. Corp. v. Siggard,* 936 P.2d 1105, 1111 (Utah Ct.App.1997) (stating that "Notice of Interest will be considered 'groundless' [under the wrongful lien statute] if Buyer did not have an arguable basis for filing the Notice or if Buyer's reasons for filing the Notice were not supported by any credible evidence").

¶ 16 In *Commercial Investment Corp. v. Siggard,* the buyer in a failed real estate transaction filed a notice of interest against the entire thirty-eight acre parcel of a residential development despite the fact that it claimed a right to purchase only sixteen acres. *See* 936 P.2d at 1108. Because the evidence supported the finding that the buyer could have limited its notice to the sixteen acres at issue, this court refused to disturb the jury verdict finding that the notice was a wrongful lien. *See id.* at 1111; *see also Russell,* 2000 UT App 82 at ¶ 15, 999 P.2d 1244 ("Because defendants do not have an interest in the ... [p]roperty, the Notice of Interest could not be authorized by [the Marketable Record Title Act] and is therefore not exempted by subsection (a) from the wrongful lien definition."). Here, Centennial did not have an interest in the entire Herriman Property. At most, Centennial claims an interest in Brook's joint tenancy in the Herriman Property. As in *Commercial Investment,* Centennial's lien recorded against the entire parcel is wrongful.

III.   The Request to Remove the Lien

¶ 17 Having concluded that the lien was wrongful, I now part from the majority with respect to Centennial's argument that the request to remove the notice of interest was invalid. Vanessa argues that she is entitled to treble damages and attorney fees because she served a request to release the lien and Centennial refused to do so for over twenty days. *See* Utah Code Ann. § 38–9–4(2) (providing for an award of treble damages, costs, and attorney fees where lien claimant refuses to remove wrongful lien within twenty days after written request is delivered personally or mailed to claimant's last known address). In response, Centennial argues that the letter requesting release of the notice of interest was defective because it was served on counsel for Centennial, rather than directly upon Centennial as required by Utah Code section 38–9–4(2). *See id.*

¶ 18 Centennial's claim raises an issue of statutory interpretation, requiring an examination of the plain language of the statute. *See Vigos v. Mountainland Builders, Inc.,* 2000 UT 2, ¶ 13, 993 P.2d 207 ("The plain language controls the interpretation of a statute, and only if there is ambiguity do we look beyond the plain language to legislative history or policy considerations."). Additionally, statutes are interpreted "to give meaning to all parts, and avoid[ ] rendering portions of the statute superfluous." *LKL Assocs. v. Farley,* 2004 UT 51, ¶ 7, 94 P.3d 279.

¶ 19 The plain language of the wrongful lien statute provides that the twenty days to remove the lien runs from the date a written request to remove the lien is "delivered personally or mailed to the last-known address of the lien claimant." Utah Code Ann. § 38–9–4(2). Thus, in unambiguous terms, the statute requires that a request to remove a wrongful lien be delivered to the lien claimant personally or to its last-known address. I believe that ignoring this delivery requirement would improperly "render[ ] portions of the statute superfluous," *LKL Assocs.,* 2004 UT 51 at ¶ 7, 94 P.3d 279. Therefore, I would hold that Vanessa's request to remove the notice of interest was invalid because she did not deliver it to Centennial as required by statute.

¶ 20 This court's decision in *Paar v. Stubbs,* 2005 UT App 310, 117 P.3d 1079, provides analogous support for that conclu-

sion. In *Paar*, we strictly construed the statute governing the procedure for filing a petition to nullify a wrongful lien, *see* Utah Code Ann. § 38–9–7(2)(c) (2005). *See Paar*, 2005 UT App 310 at ¶ 13, 117 P.3d 1079. Because the plain language of the statute requires a record interest holder petitioning to nullify a lien to serve the lien claimant with both a copy of the petition and a notice of the hearing, we rejected the Paars' argument that service of the notice alone was sufficient. *See id.* at ¶ 9. Given our prior deference to the legislature's desire for lien claimants to be served in strict compliance with the statutory requirements, I would decline to part from the wrongful lien statute's unambiguous language here.

¶ 21 Vanessa argues that requiring the request to remove the lien to be delivered directly to Centennial would violate rule 4.2(a) of the Utah Rules of Professional Conduct. *See* Utah R. Prof'l Conduct 4.2(a). On the contrary, a decision that the notice is invalid would comport with rule 4.2(a), which states:

> In representing a client, a lawyer shall not communicate about the subject of the representation with a person the lawyer knows to be represented by another lawyer in the matter, unless the lawyer has the consent of the other lawyer. *Notwithstanding the foregoing, an attorney may, without such prior consent, communicate with another's client if authorized to do so by any law, rule, or court order* . . . .

*Id.* (emphasis added). Rule 4.2(a) expressly provides that a lawyer may communicate with a party if authorized to do so by law. The wrongful lien statute's requirement that a request for release of a lien be delivered personally to the lien claimant specifically authorizes such a communication between a lawyer and a party. As such, rule 4.2 is not an ethical impediment to compliance with the notice provisions of the wrongful lien statute.[5]

¶ 22 Furthermore, I respectfully disagree with the majority's position that service on counsel is effective pursuant to rule 5 of the Utah Rules of Civil Procedure. *See* Utah R.

Civ. P. 5(b)(1) ("Whenever *under these rules* service is required or permitted to be made upon a party represented by an attorney the service shall be made upon the attorney unless service upon the party is ordered by the court." (emphasis added)). Here, service on Centennial was not required under the Utah Rules of Civil Procedure, but under the express terms of the wrongful lien statute. *See* Utah Code Ann. § 38–9–4(2) (providing for treble damages, attorney fees, and costs where lien is not removed within twenty days of a written request to do so "delivered personally or mailed to the last known address of the lien claimant"). Indeed, the legislature has shown that it knows how to incorporate the service requirements of the Utah Rules of Civil Procedure when it intends to do so. Section 38–9–7(2)(c) of the wrongful lien statute expressly provides that: "The record interest holder shall serve a copy of the petition [to nullify the lien] on the lien claimant and a notice of the hearing pursuant to Rules of Civil Procedure, Rule 4, Process." *Id.* § 38–9–7(2)(c). In contrast, section 38–9–4(2) of the wrongful lien statute makes no reference to the Utah Rules of Civil Procedure. *See id.* § 38–9–4(2). The absence of such language is instructive. *See, e.g., State Farm Mut. Auto. Ins. Co. v. Clyde*, 920 P.2d 1183, 1187 (Utah 1996) (concluding that where provisions in one section show that legislature knew how to make its intent clear, absence of similar language in a different section indicates contrary intent); *State v. Hobbs*, 2003 UT App 27, ¶ 21, 64 P.3d 1218 (same).

¶ 23 Thus, I believe the Utah Legislature expressly limited the enhanced penalties of section 38–9–4(2) to situations in which the lien claimant refused to remove the lien after being served in person or at its last-known address. Consequently, I would hold that the service on Centennial's counsel was ineffective.

### IV. Attorney Fees

¶ 24 Finally, Centennial claims that Vanessa was not entitled to her attorney fees under section 4(1) of the wrongful lien statute

---

**5.** Of course, counsel for the property owner should also serve a copy of the request to remove the lien on counsel of a lien claimant who is known to be represented.

because the request to remove the notice of interest was ineffective. Because I agree that the notice did not strictly comply with the statute, I would hold that Vanessa is entitled only to "actual damages proximately caused by the wrongful lien," Utah Code Ann. § 38-9-4(1), which the trial court set at $805.41. Consequently, I would reverse the award of the enhanced penalties provided by section 4(2) of the wrongful lien statute.[6]  *See id.* § 38-9-4(2).

DAVIS, Judge (concurring in part and dissenting in part):

¶ 25 We concur with the portion of Judge McHugh's opinion regarding the invalidity of the Centennial REPC and holding that the notice of interest was a wrongful lien.  However, we disagree with her determination that service of the request to release the wrongful lien was ineffective and that Vanessa is therefore not entitled to treble damages, attorney fees, and costs.

¶ 26 Service of the request for the release of the notice of interest on Centennial's counsel was appropriate for several reasons. First, this action was already pending when the request was served and was not commenced by a petition to nullify the lien under the provisions of Utah Code section 38-9-7(1)(3) as was the situation in *Paar v. Stubbs,* 2005 UT App 310, 117 P.3d 1079.  *See id.* at ¶ 2. Second, Centennial is a corporate entity, not an individual as was the case in *Paar. See id.* at ¶ 1. Third, Centennial was represented by counsel of record in the pending action, as corporate entities must be. *See Tracy–Burke Assocs. v. Department of Employment Sec.,* 699 P.2d 687, 688 (Utah 1985).  Fourth, the wrongful lien proceedings were conducted by motion in the context of the ongoing proceeding.  And fifth, the language of rule 5 of the Utah Rules of Civil Procedure respecting service upon a party

represented by an attorney is mandatory and applies to service both required and permitted under the rules.  *See* Utah R. Civ. P. 5(b)(1).  Thus, service of the request to release the lien on Centennial's counsel was sufficient, and Vanessa is therefore entitled to treble damages, costs, and attorney fees. *See* Utah Code Ann. § 38-9-4(2) (Supp. 2007).[7]

¶ 27 In sum, the undisputed facts support the conclusion that Centennial and Brook intended the Centennial REPC to convey the joint interest of Brook and Vanessa in the Herriman Property.  Under the Utah statute of frauds, the signatures of each joint owner of the Herriman Property were necessary to make the Centennial REPC enforceable. Because Vanessa never executed that document, the trial court was correct in granting summary judgment in favor of Vanessa on the breach of contract claim.  The notice of interest filed by Centennial was a wrongful lien, and the demand to remove it was effective.  Therefore, Vanessa is entitled to treble damages, costs, and attorney fees as provided by section 38-9-4(2) of the wrongful lien statute.

¶ 28 Given our unanimity on Sections I and II, and our majority on the remaining issues, we affirm the trial court.

¶ 29 I CONCUR: PAMELA T. GREENWOOD, Associate Presiding Judge.

---

6. Centennial also challenges the amount of attorney fees awarded to Vanessa.  Because I would hold that Vanessa is not entitled to attorney fees, I need not address this issue.

7. Centennial also contends that the amount of attorney fees awarded to Vanessa was excessive. Because Centennial challenged only the basis for an award of attorney fees before the trial court, we will not consider its argument concerning the

amount of fees for the first time on appeal.  *See Tindley v. Salt Lake City Sch. Dist.,* 2005 UT 30, ¶ 10 n. 2, 116 P.3d 295 (" 'With limited exceptions, the practice of this court has been to decline consideration of issues raised for the first time on appeal.' " (quoting *Espinal v. Salt Lake City Bd. of Educ.,* 797 P.2d 412, 413 (Utah 1990))).